**TRITON GROUP, LTD.**

v.

**The UNITED STATES.**

**No. 575–82C.**

United States Claims Court.

June 3, 1986.

Ronald H. Alenstein, New York City, for plaintiff.

Terrence S. Hartman, with whom were Asst. Atty. Gen. Richard K. Willard and David M. Cohen, Washington, D.C., for defendant.

## ORDER

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

This case grew out of a lease agreement, No. GS–023–15526 (the lease), which a contracting officer for the General Services Administration (GSA) entered into on November 9, 1971, with the Dworman Building Corporation, acting through its President, Lester J. Dworman.

The case is now before the court on the defendant's motion for summary judgment, filed November 12, 1985, the plaintiff's response, filed January 24, 1986, and the defendant's reply, filed February 10, 1986.

### Procedural History of Case

The plaintiff's complaint was filed with the court on November 12, 1982. The defendant, after requesting and receiving time enlargements totaling 120 days for the filing of its response to the complaint, filed an answer and counterclaim on May 11, 1983. The plaintiff then filed an answer to the counterclaim on May 25, 1983.

On February 15, 1984, the defendant filed a motion for partial summary judgment, on the ground that recovery on some aspects of the claim set out in the complaint was time-barred by the pertinent 6-year statute of limitations (28 U.S.C. § 2501 (1982)). The plaintiff filed a response to that motion on April 20, 1984, and the defendant filed a reply to the response on June 18, 1984.

After an oral argument on the defendant's motion for partial summary judgment was scheduled, but before the argument was held, all court proceedings were suspended at the request of the parties, so that they might explore the possibility of agreeing on a settlement of the case. The suspension continued until September 16, 1985, when the defendant informed the court in a status report that an agreement on a settlement of the case no longer seemed feasible.

Approximately 2 months later, on November 12, 1985, the defendant filed the pending motion for summary judgment on all the issues in the case. This was followed by the plaintiff's response on January 24, 1986, in opposition to the motion, and by the defendant's reply of February 10, 1986.

### The Facts

There does not appear to be any genuine issue between the parties concerning the accuracy of the facts set out in this part of the order.

Under the terms of the lease dated November 9, 1971, the Dworman Building Corporation agreed to construct an office building in Tinton Falls, New Jersey, and the defendant agreed to lease the building upon its completion. The building was later constructed in accordance with the lease; and, since the completion of the building in 1974, it has been occupied by the United States Army Electronics Command, an agency of the U.S. Department of the Army.

Soon after the lease was entered into and before the construction of the building, the building site in Tinton Falls, New Jersey, was acquired from Lester J. Dworman by L.J.D. Enterprises, Inc. (LJD). Lester J. Dworman was president of both Dworman Building Corporation and LJD. In order to acquire the building site, LJD borrowed

$700,000 from Chase Manhattan Mortgage Realty and Trust (CM Trust) on November 16, 1971.

On February 8, 1972, LJD borrowed an additional sum of $18,300,000 from CM Trust as temporary financing for the construction of the office building. Lester J. Dworman, acting individually and as the general partner of the Dworman Company of New Jersey (Dworman Company), a New York limited partnership headed by Lester J. Dworman as the sole general partner, signed a guaranty to induce CM Trust to make the $18,300,000 loan to LJD.

On May 15, 1972, Dworman Building Corporation assigned the lease to Dworman Company. The Government consented to this assignment.

Notwithstanding the previous assignment of the lease to Dworman Company in 1972, the Dworman Building Corporation assigned the lease to Security National Bank (Security) on January 30, 1974 as collateral for a $300,000 loan.

Less than a month later, and despite the previous assignments of the lease to Dworman Company and Security, Dworman Building Corporation and LJD on February 27, 1974, assigned to CM Trust all monies due or to become due under the lease.

On April 3, 1974, CM Trust made a supplemental building loan of $1,000,000 to LJD. Lester J. Dworman guaranteed this loan, individually and as general partner of Dworman Company.

Thus, as of April 3, 1974, CM Trust held three notes executed by LJD for loans in the respective amounts of $700,000, $18,-300,000, and $1,000,000. CM Trust also held three mortgages securing the notes.

On July 12, 1974, Dworman Company assigned the lease to LJD.

On July 19, 1974, CM Trust wrote a letter to the GSA, releasing any claims which CM Trust might have under the assignment to it on February 27, 1974, by Dworman Building Corporation and LJD of monies due or to become due under the lease.

Three other events relating to this case occurred on July 19, 1974:

(1) LJD assigned rents under the lease to Prudential Insurance Company of America (Prudential), in order to obtain permanent financing for the leased building.

(2) Prudential notified the GSA that LJD had assigned the rents to it.

(3) CM Trust informed GSA by letter that title to the land and building was conveyed to LJD on that date, that the three mortgages previously mentioned would be assigned by CM Trust to Prudential, and that LJD would also assign to Prudential the rents to become due thereafter under the lease.

On August 27, 1974, the Government consented to the assignment of the lease to LJD, acknowledged the assignment of the rents to Prudential, and submitted an estoppel certificate to Prudential.

On August 28, 1974, LJD closed its permanent financing arrangement with Prudential. The following related events also occurred on August 28, 1974:

(1) CM Trust assigned the outstanding notes, mortgages, and guaranties to Prudential.

(2) Security terminated and released the assignment from Dworman Building Corporation dated January 30, 1974, of monies to become due under the lease.

On July 3, 1975, LJD again assigned to Prudential all rents and other monies due under the lease.

Because of defaults on mortgage loans relating to the leased property, foreclosure proceedings were instituted in 1975 on the land where the leased building was located. A judgment of partial foreclosure was entered on December 29, 1975.

While the foreclosure proceedings were pending, LJD retained the law firm of Rogers & Wells to prosecute a claim against the United States for additional rents allegedly due, and because of other allegedly improper actions by the Government in connection with the lease.

On January 12, 1976, the mortgaged land was sold at a foreclosure sale. CM Trust was the successful bidder at the sale, but CM Trust assigned its successful bid to Shrewsbury Associates (Shrewsbury), formerly known as Dworman Company. Dworman Company officially changed its name to Shrewsbury as of February 1976, when the certificate of limited partnership was amended. Another general partner, Ayco Associates, was added to Shrewsbury at that time.

Under the date of April 30, 1976, Lester J. Dworman, acting individually and as a partner in Shrewsbury and as the sole stockholder, director, and president of LJD and of Dworman Building Corporation, wrote a letter to CM Trust, stating in part as follows:

* * * [Y]ou and any attorneys of your designation are hereby authorized to take complete charge of the preparation, presentation, settlement, collection and distribution of the GSA Claim, subject to the requirement that you shall have satisfied my obligations to Rogers & Wells for the payment of their legal fees * * * in the event you designate attorneys other than Rogers & Wells for such purpose.

The foregoing paragraph of this letter is intended to constitute a general power of attorney pursuant to Article 5, Title 15 of the New York General Obligations Law by which I hereby appoint you my attorney in fact to act in my name, place and stead in any way which I myself could do, if I were personally present, with respect to the preparation, presentation, settlement, collection and distribution * * * of the GSA Claim. It is understood and agreed that this power of attorney shall be deemed to be a power of attorney coupled with an interest which cannot be revoked.

On August 13, 1976, Dworman Building Corporation, Dworman Company, Prudential, and CM Trust filed with the contracting officer a claim in the amount of $11,-339,532, consisting of 12 subclaims. Some of the subclaims allegedly arose during construction of the leased building, and the other subclaims were based on the allegedly excessive use of electricity by the Department of the Army and on rent allegedly due and unpaid by the Government. In various decisions rendered during the 1976–78 period, the contracting officer denied all of the claimants' subclaims, with one exception, on which a partial recovery was awarded.

The contracting officer's decisions were timely appealed to the GSA Board of Contract Appeals (the Board). The Board considered subclaims separately; and, in decisions rendered during the 1977–78 period, the Board ruled that certain subclaims should be dismissed for lack of jurisdiction. On October 1, 1979, the parties to the administrative proceedings agreed, by joint motion, to dismiss without prejudice the appeals that were still pending before the Board. The Government also agreed to waive its right to insist that all administrative remedies be exhausted before judicial relief was sought on the dismissed claims.

Some three years later, on November 12, 1982, the present plaintiff, Triton Group, Ltd. (Triton)—formerly CM Trust—filed a complaint with this court. The complaint has seven counts. Counts 1 and 2 cover claims that previously were submitted to the contracting officer and later were appealed to the Board. Counts 3–7 assert claims that are based upon the use of the leased building by the Department of the Army, and were not previously involved in the administrative proceedings.

### The Issue

The defendant's motion for summary judgment is based upon the contention that the plaintiff, Triton, does not have standing to prosecute the claims set out in the complaint, because (according to the defendant) Triton is not a party to the lease and, therefore, has no privity of contract with the United States.

The plaintiff, on the other hand, asserts that it was given a power of attorney in 1976 "to prosecute the GSA claim in place

of and with all rights held by those in privity with the United States."

Accordingly, the basic issue before the court is whether Triton has standing to maintain the present action.

*Discussion*

■ As the defendant correctly states in its brief, this court, like its predecessor, the United States Court of Claims, is a court of limited jurisdiction. *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428 (1984), *aff'd without published opinion,* 758 F.2d 665 (Fed.Cir.1984). It has only such jurisdiction as has been conferred upon it by the Congress. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976).

The court's major grant of jurisdiction is found in 28 U.S.C. § 1491 (1982). This section provides in part as follows:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States * * *.

The present case grew out of the lease, a federal contract. The complaint filed by the plaintiff sometimes refers to the plaintiff as the "Lessor" under the lease, and the complaint seeks redress both under provisions of the lease and under an alleged implied contract obligating the United States to reimburse the plaintiff for excess costs allegedly incurred when government personnel used the leased building for purposes not authorized by the lease. Consequently, the plaintiff is asking the court to exercise its jurisdiction "to render judgment upon any claim against the United States founded * * * upon any express or implied contract with the United States * * *."

■ Unfortunately for the plaintiff, courts have indicated that the grant of jurisdiction to adjudicate contract claims extends only to claims sued on by persons that are in privity of contract with the United States. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir. 1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1557 (Fed.Cir.1983); *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 8, 479 F.2d 1334, 1337 (1973); *Somerset Machine & Tool Co. v. United States,* 144 Ct.Cl. 481, 482, *cert. denied,* 361 U.S. 825, 80 S.Ct. 73, 4 L.Ed.2d 69 (1959); *Petrin v. United States,* 90 Ct.Cl. 670, 672–73 (1940). The facts show that the plaintiff is not in privity of contract with the United States as regards the lease.

It has been noted in the statement of facts that, during the 1971–74 period, CM Trust (now Triton) held mortgages on the leased property. However, these mortgages, and the notes which they secured, were transferred by CM Trust to Prudential on August 28, 1974.

Also, as noted in the statement of facts, on February 27, 1974, CM Trust received from Dworman Building Corporation, the original lessor under the lease, and LJD, which then held legal title to the leased property, an assignment of all monies due or to become due under the lease. A few months later, however, in a letter which CM Trust wrote to the GSA on July 19, 1974, CM Trust released any claims which it might have under the assignment dated February 27, 1974.

For standing to sue, Triton actually does not rely on the existence of privity of contract between its predecessor, CM Trust, and the United States. Rather, Triton relies upon the power of attorney which Lester J. Dworman granted to CM Trust in the letter dated April 30, 1976.

The power of attorney from Lester J. Dworman was completely ineffective to grant the plaintiff, as successor to CM Trust, standing to maintain an action against the United States on the contract that is involved in the present litigation. As pointed out earlier in the order, the congressional grant of jurisdiction for the court to adjudicate contract claims, as construed by the courts, extends only to claims

sued on by persons that are in privity of contract with the United States. Only Congress could expand the jurisdiction of the court and authorize the court to take jurisdiction over a contract claim sued on by a person not in privity of contract with the United States, but acting under a power of attorney executed by a person or persons in privity of contract with the United States as regards the particular contract involved in the litigation. Lester J. Dworman obviously could not expand the court's jurisdiction.

It necessarily follows that, as the plaintiff is not in privity of contract with the United States regarding the lease, this court lacks jurisdiction to adjudicate the merits of the claims asserted by the plaintiff.

■ Moreover, the 1976 power of attorney from Lester J. Dworman relied on by the plaintiff was subject to, and invalidated by, the 1976 version of the federal statutory provision (31 U.S.C. § 203 (1976)) applicable to assignments of claims against the United States. In 1976, this section was applicable to "[a]ll transfers and assignments made of any claim upon the United States, * * * and *all powers of attorney*, orders, or other authorities *for receiving payment of any such claim * *"* (emphasis supplied). The plaintiff's power of attorney, which authorized the plaintiff "to take complete charge of the preparation, presentation, settlement, collection and distribution of the GSA Claim," was necessarily an authority "for receiving payment" of any amount that might be recovered on the claim, and, hence, was within the purview of 31 U.S.C. § 203 (1976).

The pertinent section then proceeded to declare "null and void" any such authority unless "executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." The power of attorney involved here was not executed in the presence of at least two attesting witnesses, and it was granted *before* the allowance of the claim, the ascertainment

of the amount due, and the issuance of a warrant for payment. In view of these deficiencies, the 1976 power of attorney to CM Trust was invalid.

It should be mentioned in this connection that assignments to banks, trust companies, or other financing institutions of monies due or to become due from the United States were exempted from the restrictive provisions previously mentioned as applicable in 1976 to assignments of claims against the United States. The purpose of such an exemption, however, was to make it easier for persons doing business with the Government to obtain from financial institutions loans with which to finance their government-related activities. *See Mercantile National Bank at Dallas v. United States*, 150 Ct.Cl. 700, 707, 280 F.2d 832, 836 (1960); *Royal Indemnity Co. v. United States*, 117 Ct.Cl. 736, 748, 93 F.Supp. 891, 895 (1950). The power of attorney that is involved in the present case was executed in 1976, long after loans with which to finance the lessor's activities in connection with the lease were obtained from CM Trust in 1971, 1972, and 1974. The notes and mortgages evidencing such loans were transferred by CM Trust to Prudential in 1974, and the assignment of rents to CM Trust under the lease was released by CM Trust in 1974. Hence, CM Trust, now Triton, could hardly qualify as a "financing" institution in 1976 (when the power of attorney was executed), for the purpose of claiming the benefits of the exemption in favor of financing institutions under the legislation relating to assignments of claims (now codified as 31 U.S.C. § 3727 (1982)).

## *The Counterclaim*

It has been mentioned previously that the defendant filed a counterclaim in this case against the plaintiff on May 11, 1983, and that the plaintiff filed an answer to the counterclaim on May 25, 1983. There have been no further proceedings on the counterclaim.

The language of 28 U.S.C. § 1491 (1982), which is the Claims Court's principal grant

of jurisdiction, clearly indicates that this court generally does not have jurisdiction over claims by the United States against other persons. As exceptions to this general rule, the court was granted jurisdiction by 28 U.S.C. §§ 1503 and 2508 (1982) to adjudicate certain types of demands, including counterclaims, made by the United States against parties that are prosecuting claims against the Government in this court. Section 2508, which relates specifically to counterclaims, provides in part as follows:

Upon the trial of any suit in the Claims Court in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

This statutory provision, in referring to "any plaintiff making claim against the United States in said court," necessarily presupposes the prosecution by a plaintiff of a claim as to which the Claims Court has jurisdiction, as the attempted assertion in this court by a plaintiff of a claim outside the jurisdiction of the court would, in effect, be a void act. *Mulholland v. United States,* 175 Ct.Cl. 832, 846, 361 F.2d 237, 245 (1966).

 Therefore, the filing by the present plaintiff of a complaint based upon a claim as to which the court lacks jurisdiction did not provide a proper predicate for the filing of a counterclaim by the United States

against the plaintiff under 28 U.S.C. § 2508, and the court similarly lacks jurisdiction to adjudicate the Government's counterclaim. It necessarily follows that when the plaintiff's claim is rejected because of a lack of jurisdiction, the defendant's counterclaim must be dismissed along with the plaintiff's complaint, without regard to the merits of the counterclaim. *Somali Development Bank v. United States,* 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974); *Mulholland v. United States, supra,* 175 Ct.Cl. at 846, 361 F.2d at 245.

### Conclusion

For the reasons previously stated in the order, the court concludes that it does not have jurisdiction to adjudicate the claims asserted by the plaintiff. The court also lacks jurisdiction to adjudicate the defendant's counterclaim.

The defendant's motion to dismiss the complaint for lack of jurisdiction is granted.

The clerk will dismiss the complaint.

The clerk will also dismiss the counterclaim.

No costs.

IT IS SO ORDERED.