**NATIONAL NEIGHBORS, INC.,**
Plaintiff–Appellant,

v.

The **UNITED STATES,**
Defendant–Appellee.

No. 87–1329.

United States Court of Appeals,
Federal Circuit.

Feb. 5, 1988.

Alan W.H. Gourley, Crowell & Moring, Washington, D.C., argued for plaintiff-appellant.

Gordon D. Kromberg, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett and Genevieve Holm, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on the brief, for defendant-appellee.

Before SMITH, NIES, and ARCHER, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this Government contract case, the United States Claims Court dismissed for lack of jurisdiction National Neighbors, Inc.'s (National Neighbors), complaint arising from the adverse decision of the United States Department of Housing and Urban Development (HUD) contracting officer.[1] The Claims Court held that it was precluded by the Contracts Disputes Act[2] from deciding the case. We vacate the Claims Court's decision and remand the case to the Claims Court.

## I. *Issue*

The controlling issue on appeal is whether the Claims Court erred by dismissing for lack of jurisdiction National Neighbors' complaint arising from the adverse decision by the HUD contracting officer when National Neighbors, prior to filing its complaint in the Claims Court, had filed an appeal from the contracting officer's decision to the HUD Board of Contract Appeals (board) but had not received, at the time the Claims Court dismissed National Neighbors' complaint, a determination from the board whether the board had jurisdiction over National Neighbors' appeal.

## II. *Background*

In July 1979, National Neighbors entered into contractual discussions with HUD to

---

1. *National Neighbors, Inc. v. United States*, No. 398–84C (Cl.Ct. filed Mar. 6, 1987) (White, S.J.) (unpub.).

2. 41 U.S.C. §§ 601 *et seq.* (1982).

perform for HUD a national research project concerning the extent and effects of the exclusion of families with children from rental housing in the United States. In late December 1979, although the contract had not been signed, HUD gave authorization to National Neighbors to begin work on the project. On May 1, 1980, HUD executed contract HC–5213 with National Neighbors. Under the terms of this contract, National Neighbors was to earn $113,774; however, in performing its part of the contract, National Neighbors incurred significant additional costs. National Neighbors sought reimbursement for these additional costs from the Government.

In a letter dated August 3, 1983, the HUD contracting officer denied National Neighbors' claim for reimbursement and, in addition, disallowed $19,705.47 of the original contracting price. The contracting officer's letter indicated to National Neighbors that, to contest the contracting officer's decision, National Neighbors either must supply written notice to the board within 90 days from the date of receipt of the contracting officer's decision or must bring a direct action to the Claims Court within 12 months of the date of receipt of the contracting officer's decision. This letter allegedly was misdirected to a former employee of National Neighbors and was not received by National Neighbors until November 18, 1983. In a letter dated November 21, 1983, National Neighbors notified the board of its intent to appeal the final decision of the contracting officer. On December 20, 1983, the board docketed National Neighbors' appeal.

On August 3, 1984, National Neighbors, contesting the contracting officer's adverse decision, filed a complaint in the Claims Court "to protect [National Neighbors'] rights in the event that the [board] determines that [National Neighbors'] appeal (HUD BCA No. 84–848–C4) was untimely filed." Prior to the board making a determination whether it had jurisdiction over National Neighbors' appeal, the Claims Court, pursuant to the Contracts Disputes Act, dismissed National Neighbors' complaint for lack of jurisdiction. The Claims Court, relying on both *Sante Fe Engineers, Inc. v. United States*[3] and *Diamond Manufacturing Co. v. United States*,[4] construed 41 U.S.C. § 609(a)(1) of the Contracts Disputes Act as providing that a Government contractor, after receiving an adverse decision from the contracting officer, *either* may file an appeal with the board from the contracting officer's decision *or* may file a direct action in the Claims Court contesting the contracting officer's decision. The Claims Court reasoned that, because National Neighbors had filed an appeal with the board prior to filing a direct action in the Claims Court, National Neighbors was precluded by the Contracts Disputes Act from filing a direct action in the Claims Court. On this basis, the Claims Court dismissed National Neighbors' complaint for lack of jurisdiction.

For the reasons set forth below, we hold that the Claims Court erred by dismissing, at this time, National Neighbors' complaint for lack of jurisdiction. The proceeding before the Claims Court simply was not ripe for such action.

### III. *Analysis*

It is well established that, pursuant to the Contracts Disputes Act, a contractor wishing to contest an adverse final decision by the contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the Claims Court. This choice has given rise to a body of jurisprudence known as the "Election Doctrine." The Election Doctrine controls, as a matter of law, the present appeal.

The Election Doctrine first was articulated by the United States Court of Claims in *Tuttle/White Constructors, Inc. v.*

---

3. *Santa Fe Eng'rs, Inc. v. United States*, 677 F.2d 876, 230 Ct.Cl. 512 (1982).

4. *Diamond Mfg. Co. v. United States*, 3 Cl.Ct. 424 (1983).

*United States*[5] and in *Santa Fe Engineers, Inc. v. United States.*[6] The Court of Claims recognized that, although the Contracts Disputes Act provides a contractor with a choice of forums in which to contest an adverse decision by the contracting officer, the contractor is precluded by the Contracts Disputes Act from pursuing its claim in both forums.[7] Once a contractor makes a binding election under the Election Doctrine to appeal the contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternate forum.[8] Under the Election Doctrine, the binding election of forums is an "either-or" alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision.[9]

■ The evolution of the Election Doctrine, initiated by the Court of Claims, was continued by the Claims Court in *Olsberg Excavating Co. v. United States*[10] and in *Cosmic Construction Co. v. United States.*[11] The Claims Court, in these cases, held that the mere filing by a contractor of an appeal with the appropriate board of contract appeals was not a binding election, as contemplated by the Contracts Disputes Act, and did not bar the subsequent filing of a claim with the Claims Court *if* it was determined by the board that the contractor's appeal to the board was untimely.[12] A contractor's choice of forums in which to contest the contracting officer's adverse decision is a binding election, under the Election Doctrine, *only* if that choice truly is available.[13] An untimely appeal to the board is not a choice that truly is available;

an untimely appeal to the board is an absolute nullity because the board lacks jurisdiction over such an appeal.[14] Accordingly, under the Election Doctrine, a contractor's choice to pursue an appeal in a forum lacking jurisdiction is not a binding election.[15]

■ We recognize that, although this court is bound by the case law precedent set forth by the Court of Claims, we are not bound by the case law precedent of the Claims Court.[16] However, we are in complete agreement with the Claims Court's analyses and holdings on the Election Doctrine in both *Olsberg Excavating* and *Cosmic Construction;* therefore, this court will adopt as its own the development of the Election Doctrine by the Claims Court in these cases, in addition to following the case law established by our predecessor court, as a basis upon which to resolve the issue now before us.

■ Application of the Election Doctrine, as set forth above, to the issue now before this court leads us to conclude that the Claims Court erred by dismissing National Neighbors' complaint contesting the contracting officer's adverse decision. Under the Election Doctrine, a contractor's filing an appeal before the appropriate board of contract appeals does not deprive the contractor of its ability, pursuant to the Contracts Disputes Act, to file a suit in the Claims Court. Rather, under the Election Doctrine, it is a contractor's filing of an appeal or initiation of a suit in a *forum with jurisdiction over the proceeding* that precludes the contractor, pursuant to the Contracts Disputes Act, from pursuing its claim in the alternate forum. Under the

---

5. *Tuttle/White Constructors, Inc. v. United States,* 656 F.2d 644, 228 Ct.Cl. 354 (1981).

6. *Santa Fe Eng'rs,* 677 F.2d 876.

7. *Tuttle/White,* 656 F.2d at 649.

8. *Id.* at 647.

9. *Santa Fe Eng'rs,* 677 F.2d at 878.

10. *Olsberg Excavating Co. v. United States,* 3 Cl.Ct. 249 (1983).

11. *Cosmic Constr. Co. v. United States,* 5 Cl.Ct. 237 (1984).

12. *Olsberg Excavating,* 3 Cl.Ct. at 251–52; *Cosmic Constr.,* 5 Cl.Ct. at 239–40.

13. *Olsberg Excavating,* 3 Cl.Ct. at 252.

14. See *Cosmic Constr. Co. v. United States,* 697 F.2d 1389, 1390 (Fed.Cir.1982).

15. *Olsberg Excavating,* 3 Cl.Ct. at 252.

16. *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982).

Election Doctrine, only if the chosen forum has jurisdiction over the proceeding can a contractor's choice to pursue its claim in that forum be a binding election. Because, at the time the Claims Court dismissed for lack of jurisdiction National Neighbors' complaint, the board had not determined whether it had jurisdiction over National Neighbors' appeal, we hold that the proceeding before the Claims Court was not ripe for the Claims Court to dismiss National Neighbors' complaint pursuant to the Contracts Disputes Act on grounds that National Neighbors had made a binding election under the Election Doctrine by appealing to the board the contracting officer's adverse decision.

For the proceeding before the Claims Court to be ripe for action, the board first must determine whether, as a matter of fact, National Neighbors' appeal was timely and thus whether, as a matter of law, the board has jurisdiction over National Neighbors' appeal. If the board finds that National Neighbors' appeal is untimely and on that basis concludes that the board lacks jurisdiction over the appeal, then, under the Election Doctrine, as articulated by the Claims Court in both *Olsberg Excavating* and *Cosmic Construction,* National Neighbors' choice to appeal the contracting officer's adverse decision to the board was a nullity and is not a binding election. In that event, National Neighbors is able to contest in the Claims Court, if its suit in that forum is found to be timely, the contracting officer's adverse decision.

In the alternative, if the board finds that National Neighbors' appeal is timely and on that basis determines that the board has jurisdiction over National Neighbors' appeal, then, under the Election Doctrine, as articulated by the Court of Claims in *Santa Fe Engineers* and *Tuttle/White,* National Neighbors' choice to appeal the contracting officer's adverse decision to the board is a binding election and National Neighbors' choice to contest in the Claims Court the contracting officer's adverse decision is precluded by the Contracts Disputes Act. At that time, the proceeding before the Claims Court will be ripe for the Claims Court properly to dismiss pursuant to the Contracts Disputes Act National Neighbors' complaint for lack of jurisdiction.

The Government argues that the Claims Court pursuant to the Contracts Disputes Act properly dismissed for lack of jurisdiction National Neighbors' complaint because National Neighbors previously had made a binding election under the Election Doctrine when it chose to appeal the contracting officer's adverse decision to the board. On this basis, the Government concludes that, having made a binding election to proceed before the board, National Neighbors' effort to have two proceedings pending simultaneously in the two forums must fail. We disagree.

■ As established above and as recognized by the Government in its brief, an untimely appeal to the board is not a binding election under the Election Doctrine and will not preclude a contractor from pursuing a timely suit in the Claims Court. Here, there has been no determination that the appeal before the board is timely and that the board has jurisdiction over the appeal. The statutory choice is to appeal the *decision of the contracting officer,* i.e., to *pursue* that claim in one forum in lieu of another. The mere filing of a document, which does not mature into a "proceeding" on the merits, is not a viable election pursuant to the statute. Prior to the board determining whether National Neighbors' appeal is timely and that the board has jurisdiction and can resolve the dispute, it is not possible to determine under the Election Doctrine whether National Neighbors has made a binding election to choose the board *for resolution of its dispute* with the contracting officer, by appealing to the board. On this basis, we conclude that the proceeding before the Claims Court was not ripe for the Claims Court to dismiss National Neighbors' complaint.

■ In addition to arguing against the interpretation of the Contracts Disputes Act adopted by this court and its predecessor, the Government contends that both the Claims Court and the board lack jurisdiction over National Neighbors' actions contesting the contracting officer's adverse de-

cision on grounds that National Neighbors never submitted a "claim" in writing to the HUD contracting officer requesting a final decision. Against the urgings of the Government, we are unable to resolve the issue at this time. Because it weaves together both legal and factual determinations, we are precluded from deciding the issue prior to the appropriate fact-finding forum making the requisite factual determinations.

### CONCLUSION

In view of the foregoing, we hold that the Claims Court erred by dismissing for lack of jurisdiction, pursuant to the Contracts Disputes Act, National Neighbors' complaint arising from the adverse decision of the HUD contracting officer. The case before the Claims Court was not ripe for such action. Accordingly, we vacate the Claims Court's decision and remand this case to the Claims Court in order that it may preside over the proceeding in a manner consistent with this opinion.

**VACATED AND REMANDED.**