BONNEVILLE ASSOCIATES, Plaintiff,

v.

The UNITED STATES, Defendant,

v.

CAMCO CONSTRUCTION CO.,
Third Party Defendant.

No. 92–21C.

United States Court of Federal Claims.

Nov. 22, 1993.

Martin E. Seneca, Jr., Reston, VA, for plaintiff.

Lisa B. Donis, Civ. Div., U.S. Dept. of Justice, Washington, DC, with whom were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Bryant G. Snee, Asst. Director, and Thomas Y. Hawkins, Gen. Services Admin., San Francisco, CA, of counsel, for defendant.

Kent B. Scott, Salt Lake City, UT, for third party defendant.

## OPINION

MARGOLIS, Judge.

This government contracts case comes before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. The plaintiff, Bonneville Associates ("Bonneville"), contracted with the defendant, acting through the General Services Administration ("GSA"), for the repair and sale of an office building. Disputes arose regarding certain contractual obligations of Bonneville. After receiving a final decision of the contracting officer and filing a notice of appeal with the General Services Administration Board of Contract Appeals ("GSBCA"), plaintiff withdrew its notice of appeal and brought an

action involving the same operative facts in this court.

Defendant argues that the contract is subject to the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.*, because it involved both the repair and sale of real property. Defendant further argues that 41 U.S.C. § 609 and the Election Doctrine bind plaintiff to its decision to appeal the final decision of the contracting officer to the GSBCA, and that this court lacks jurisdiction to hear plaintiff's claim. Plaintiff contends that this court has subject matter jurisdiction because the contract, primarily for the procurement of real property in being, is not subject to the Contract Disputes Act, and therefore, the GSBCA does not have jurisdiction over this case.

After a careful review of the record and after hearing oral argument, this court grants defendant's motion to dismiss for lack of subject matter jurisdiction.

## FACTS

The material facts are uncontested. On September 30, 1987, Bonneville entered into a contract with GSA for the repair and sale of an office building in Las Vegas, Nevada. GSA purchased the building for $9,908,452. The parties agreed that $1,708,452 of the contract price would be withheld for improvements to the building by Bonneville. These funds were to be paid to Bonneville as the repair work was completed. the amount withheld by GSA, $500,000 r ains unpaid.

The parties disputed certain mec nical and structural improvements to the l 'ding to be performed by plaintiff. Spe ally, Bonneville and GSA attempted to solve disputes concerning floor strengther and leveling, additional cooling capacir luct work and acoustical insulation, and tain warranty issues. Inability to resolve disputes led to an August 21, 1991 final ision of the contracting officer demanding 195,069 from Bonneville, allegedly repre ting the cost to defendant of correcting d iciencies in the building.

The contracting officer's final decision notified Bonneville of its right to appeal the decision to either the GSBCA within 90 days, or to the United States Court of Federal Claims within twelve months. Bonneville filed a notice of appeal with the GSBCA on November 19, 1991. The GSBCA docketed the appeal on November 26, 1991. Bonneville filed a motion to withdraw its GSBCA appeal on January 8, 1992, and the GSBCA dismissed the appeal without prejudice on January 17, 1992. On January 13, 1992, Bonneville filed this action.

## DISCUSSION

The issue is whether the Contract Disputes Act ("Act") covers the contract between Bonneville and GSA, thus binding plaintiff to the Act's procedural rules and conferring jurisdiction on the GSBCA. If this case is subject to the Contract Disputes Act, 41 U.S.C. § 609 [1] and the Election Doctrine require dismissal of plaintiff's case for lack of subject matter jurisdiction. Conversely, if this case is not covered by the Contract Disputes Act, then defendant's motion must be denied because the GSBCA was without jurisdiction over plaintiff's claim.

The contract was a dual-purpose agreement for both the repair and sale of an office building. The disputes concern the plaintiff's obligations under the repair and construction clauses of the contract.

Section 8(d) of the Act provides that the boards of contract appeals "shall have jurisdiction to decide any appeal from a decision of a contracting officer ... relative to a contract." 41 U.S.C. § 607(d). Section 3 of the Act limits the types of contracts to which the statute applies:

§ 602. Applicability of law

(a) Executive agency contracts

Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of title 28) entered into by an executive agency for—

---

1. Section 609 provides that a contraci may bring an action on a claim in the Court o ederal Claims in lieu of appealing the decisi of a contracting officer to an agency board. 41 U.S.C. § 609(a)(1).

(1) the procurement of property, *other than real property in being;*

(2) the procurement of services;

(3) *the procurement of construction, alteration, repair or maintenance of real property;* or,

(4) the disposal of personal property.

41 U.S.C. § 602 (emphasis added).

Plaintiff contends that this case clearly fits within the section 602(a)(1) exception for the procurement of real property and that the Act does not apply. Defendant counters by arguing that the contract was for both the repair and sale of an office building, that the dispute involves only the plaintiff's obligations under the repair clauses of the contract, and that section 602(a)(3) brings this dispute within the Act.

Neither the Act nor implementing regulations define "real property in being." The United States Court of Appeals for the Federal Circuit, discussing section 602(a)(1), determined that lease contracts are within the scope of the Act. *See Forman v. United States,* 767 F.2d 875, 878–79 (Fed.Cir.1985). As that court noted:

> [t]he legislative history of the Disputes Act contains little illuminating Congress' intended meaning of the phrase "real property in being." The committee reports are silent. We are directed to the debate on the floor of the House of Representatives, in which Congressman Kindness remarked: "The procedures and remedies set down in the bill are applicable to all express or implied contracts entered into by the United States for (1) the procurement of property (other than real property in being which is governed by the laws of eminent domain)." 124 Cong.Rec. 31,645 (1978). This morsel is not a sufficient explanation of the statute's purpose or meaning for it to be highly persuasive in this case. We note, however, that the Government enters into a lease by agreement (as in the instant case) and not through the exercise of eminent domain (or the threat thereof).

*Id.* at 878. Similarly, the parties here entered into a contract for the repair and sale of an office building by agreement and not

through the exercise of eminent domain or the threat thereof.

Assuming, *arguendo,* that the section 602(a)(1) exception excludes all contracts for procurement of real property in being from the Act's coverage, this court's inquiry is not ended. The contract was not merely for the procurement of real property in being; it was for the *repair* and sale of an office building. Section 602(a)(3) of the Act expressly brings contracts for the "construction, alteration, repair or maintenance of real property" within the statute. Therefore, one purpose of the dual-purpose contract is specifically covered by the Act.

Two appeals boards which have considered the issue indicated that the exercise of jurisdiction is proper over a dual-purpose contract. In *Sierra Pacific Industries,* AGBCA No. 79–200, 80–1 BCA ¶ 14,383 at 70,915, 1980 WL 2338, the Agriculture Board of Contract Appeals ("AGBCA") considered its jurisdiction in a case involving a contract for the sale of timber and road construction. Although the AGBCA concluded that timber sales were covered by the Act, it indicated it might have found jurisdiction based on the road construction portion of the contract even if the timber sale had not been within the Act.

In *The Korman Corp.,* HUD BCA No. 81–563–C5, 82–2 BCA ¶ 16,044 at 79,491–92, 1982 WL 7783 the HUD Board of Contract Appeals considered its jurisdiction over a contract for the repair and sale of real property. Although the Government was selling, not purchasing the real property that was the subject of the contract in that case, the Board specifically found that:

> Section 3(a) of the Act [41 U.S.C. § 602(a)] is sufficiently broad to encompass contracts such as this, which have one or more of the enumerated purposes. The Contract Disputes Act is remedial legislation designed to promote consistent procedures for deciding procurement disputes. Remedial legislation is to be liberally construed to effect its purposes.

*Id.* at 79,492 (citation omitted).

The Federal Circuit also has shed light on the issue of applying the Act to dual-purpose

contracts. In discussing the Act's coverage of leases, the court stated:

> Moreover, the Government has even less ground for contesting the Board's jurisdiction in this particular case because the lease was part of a larger agreement over which the Board plainly does have jurisdiction. In essence, in 1960 the Government promised to lease the Forman's property in exchange for their agreement to construct the postal facility. The lease's terms were made part of this contract by reference. Without doubt, the Board has jurisdiction over construction contracts. Were we to accept the Government's view in this case, the Board would have jurisdiction to construe the Forman's obligations, but not the Government's. We refuse to believe that Congress, when it excluded contracts relating to the procurement of "real property in being," intended such a bizarre result in this construction-plus-lease type of case.

*Forman,* 767 F.2d at 879.

■ In *Forman,* the plaintiffs performed construction work as part of a lease contract. The *Forman* court recognized the issue of dual-purpose contracts and rejected the "bizarre result" of Board jurisdiction to construe the Formans' obligations but not those of the Government. *Id.* That rationale is equally applicable to a construction-plus-purchase case where the dispute concerns only the construction clauses of the contract.

Plaintiff argues, however, that the dispute here involves the sale of property and brings this case within the procurement of real property exception of section 602(a)(1). Specifically, plaintiff contends that the repair clauses in the contract were part of the overall purchase agreement, and therefore, its repair obligations necessarily involve the sale clauses of the contract. Plaintiff also argues that defendant's counterclaim is, in part, based on warranty provisions in the contract and similarly involves the sale clauses of the agreement.

The realities of the contractual relationship between Bonneville and GSA undercuts plaintiff's first contention. It is apparent that the parties envisioned a purchase component and a repair component in the contract. GSA agreed to purchase the building for $9,908,452 but it withheld $1,708,452 of the contract price until Bonneville completed certain repair work. The parties assigned the purchase and repair clauses distinct monetary values, and separate conditions triggered payment of those sums. Moreover, the contract includes a disputes clause which subjects only the repair clauses to the Contract Disputes Act. This court finds that the repair clauses of the contract are sufficiently distinct so as not to involve the sale clauses of the contract.

Bonneville's second contention looks beyond its own complaint, which demands $500,000 in withheld repair funds and $5,000,000 in unspecified damages, to defendant's counterclaim to support plaintiff's jurisdictional claims. Plaintiff argues that defendant's counterclaim raises warranty issues under the contract and gives this court jurisdiction to adjudicate this case.

The Tucker Act, 28 U.S.C. §§ 1491 *et seq.,* generally proscribes jurisdiction over claims by the United States against other persons. An exception exists for counterclaims by the United States against parties that file claims against the Government in this court.

> Upon the trial of any suit in the United States Court of Federal Claims in which any set-off, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

28 U.S.C. § 2508.

The U.S. Court of Federal Claims, then the U.S. Claims Court, has previously interpreted section 2508 and considered the effect of a jurisdictionally deficient complaint on a government counterclaim. In *Triton Group, Ltd. v. United States,* 10 Cl.Ct. 128 (1986), the court stated:

> This statutory provision, in referring to "any plaintiff making claim against the United States in said court," necessarily presupposes the prosecution by a plaintiff of a claim as to which the Claims Court has jurisdiction, as the attempted assertion

in this court by a plaintiff of a claim outside the jurisdiction of the court would, in effect, be a void act. *Mulholland v. United States,* 175 Ct.Cl. 832, 846, 361 F.2d 237, 245 (1966). Therefore, the filing by the present plaintiff of a complaint based upon a claim as to which the court lacks jurisdiction did not provide a proper predicate for the filing of a counterclaim by the United States against the plaintiff under 28 U.S.C. § 2508, and the court similarly lacks jurisdiction to adjudicate the Government's counterclaim. It necessarily follows that when the plaintiff's claim is rejected because of a lack of jurisdiction, the defendant's counterclaim must be dismissed along with the plaintiff's complaint, without regard to the merits of the counterclaim. *Somali Development Bank v. United States,* 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974); *Mulholland v. United States, supra,* 175 Ct.Cl. at 846, 361 F.2d at 245.

*Id.* at 134.

■ *Triton Group* and the cases cited therein stand for the principle that this court must look to the plaintiff's complaint to determine whether this court has jurisdiction. Further, plaintiff cannot rely on a government counterclaim to establish subject matter jurisdiction. Plaintiff's complaint demands payment of funds withheld for allegedly completed repair work under the contract and other unspecified damages, and does not involve the sale clauses. Thus, the issues are clearly within the Act's coverage. Bound by the *Forman* court's rationale, this court is persuaded that this case is covered by the Act.

While *Forman* alone may be determinative in finding that this case is covered by the Act, additional factors compel this result. Significantly, the contract has a disputes clause providing that "[a]ny dispute arising from the work contemplated by Paragraphs 8, 9, and 11 hereof shall be governed by the Contract Disputes Act of 1978." Contract No. GS–09B–88–1, Sec. 24. The disputes clause references the construction work by Bonneville, and does not apply to any disputes arising from the conveyance of the real property. This clause is consistent with the Federal Circuit's decision in *Forman* and brings this case within the coverage of the Contract Disputes Act.

■ Moreover, the purpose of the Act is to "provide[ ] a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving Government contract claims." S.Rep. No. 95–1118, 95th Cong., 2d Sess. 1 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235. As remedial legislation, the Act must be given a liberal construction consistent with the Act's overriding purpose. *See, e.g., United States v. Bacto–Unidisk,* 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969). This court's interpretation furthers the overriding purpose of the statute to establish a fair and comprehensive system for resolving Government contract claims.

■ In light of *Forman,* the disputes clause of the contract, and the remedial nature of the statute, this court finds that the plaintiff's claim is covered by the Act. Accordingly, this court next considers the applicability of the Election Doctrine.

The Court of Claims recognized that, although the Contract Disputes Act provides a contractor with a choice of forums in which to contest an adverse decision by the contracting officer, the contractor is precluded by the Contract Disputes Act from pursuing its claim in both forums. Once a contractor makes a binding election under the Election Doctrine to appeal the contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternate forum. Under the Election Doctrine, the binding election of forums is an "either-or" alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision.

*National Neighbors, Inc. v. United States,* 839 F.2d 1539, 1542 (Fed.Cir.1988). Once this court finds that a plaintiff appealed a contracting officer's final decision to a board, "the only remaining issue is whether that election was 'informed, knowing and voluntary.'" *Mark Smith Constr. Co., Inc. v. United States,* 10 Cl.Ct. 540, 544 (1986) (citations omitted).

Plaintiff was advised that the contracting officer's decision was a final decision and that plaintiff had a right to appeal the decision to the GSBCA within 90 days or to the Court of Federal Claims within 12 months. *See* 41 U.S.C. § 609(a). Bonneville filed a timely notice of appeal with the GSBCA and its decision was "informed, knowing and voluntary." Under these circumstances, this court dismisses plaintiff's case pursuant to the Election Doctrine. *See, e.g., Prime Constr. Co., Inc. v. United States,* 231 Ct.Cl. 782, 784, 1982 WL 25226 (1982).

## CONCLUSION

Because the contract is covered by the Contract Disputes Act, this court is without subject matter jurisdiction. The case must be dismissed pursuant to the Election Doctrine. The defendant's motion to dismiss is granted. The clerk will dismiss the complaint without prejudice. No costs.