**BONNEVILLE ASSOCIATES, John N. Owens, and Machan Hampshire Properties, LTD., Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee,**

v.

**CAMCO CONSTRUCTION CO., Third Party–Defendant/Appellee.**

No. 94–5086.

United States Court of Appeals, Federal Circuit.

Dec. 19, 1994.

Martin E. Seneca, Jr., Reston, VA, argued, for plaintiffs-appellants.

Lisa B. Donis, Atty., Dept. of Justice, Washington, DC, argued, for defendant-appellee. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, and Bryant G. Snee, Asst. Director.

Kent B. Scott and Jeffery R. Price, of Walstad & Babcock, Salt Lake City, UT, were on the brief, for third party-defendant/appellee.

Before NEWMAN, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Bonneville Associates, John N. Owens, and Machan Hampshire Properties, Ltd. (collectively "Bonneville") appeal from the judg-

ment of the United States Court of Federal Claims[1] dismissing Bonneville's complaint without prejudice for lack of subject matter jurisdiction. *Bonneville Assocs. v. United States*, 30 Fed.Cl. 85 (1993). We affirm.

## BACKGROUND

On September 30, 1987, the government, acting through the General Services Administration, contracted with Bonneville to purchase an office building in Las Vegas, Nevada for $9,908,452. The agreement required Bonneville to make extensive repairs and alterations to render the building suitable for government use.[2] To ensure completion of the repair and alteration work, the contract provided that $1,708,452 of the contract price would be withheld and paid to Bonneville as the work progressed.

After title was conveyed to the government, disputes arose concerning the building's structural integrity and its heating, ventilation, and air conditioning units ("HVAC system"). On August 21, 1991, the contracting officer ("CO") issued a final decision demanding payment from Bonneville of $5,195,069 to cover the cost of correcting the structural defects[3] and improving the HVAC system's cooling capacity. Damages assessed for the alleged structural defects were based on the contract's warranty clause; damages for the deficient HVAC system were based on contract provisions relating to the repair and alteration work.

Bonneville filed a notice of appeal with the General Services Administration Board of Contract Appeals on November 19, 1991. The board docketed the appeal on November 26, 1991. On January 8, 1992, Bonneville moved to withdraw its appeal to the board. The board dismissed the appeal without prejudice on January 17, 1992.

Bonneville filed a complaint in the Court of Federal Claims on January 13, 1992, demanding $500,000 in withheld repair funds and $5,000,000 in unspecified damages. The government moved to dismiss Bonneville's complaint for lack of subject matter jurisdiction, arguing that under the judicially-created "Election Doctrine," Bonneville's prior appeal to the board was a binding choice of forum that deprived the Court of Federal Claims of jurisdiction. In response, Bonneville argued that the primary purpose of the contract was the government's procurement of real property, excluded from the board's jurisdiction under the Contract Disputes Act of 1978 ("CDA").[4] *See* 41 U.S.C. § 602(a)(1) (Supp. V 1993) (CDA does not apply to contracts for the "procurement of . . . real property"). Bonneville argued that, because the board lacked jurisdiction over its appeal, the Election Doctrine did not apply. *See National Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed.Cir.1988) ("[A] contractor's choice to pursue an appeal in a forum lacking jurisdiction is not a binding election.").

The Court of Federal Claims determined that the contract was a dual-purpose agreement for both the purchase and repair of real property, and that the contract provisions relating to the procurement of the building were distinct from those concerning Bonneville's obligation to repair and alter the property. *Bonneville*, 30 Fed.Cl. at 88 ("[T]he repair clauses of the contract are sufficiently distinct so as not to involve the sale clauses of the contract."). The court also found that the dispute between Bonneville and the government involved only the repair and alteration, not the sale, of the building. *Id.* at 88. The court noted that the contract's disputes

---

1. Effective October 29, 1992, the Claims Court was renamed the "United States Court of Federal Claims." Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992).

2. Paragraphs 8–10 of the contract define three categories of such repairs and alterations, namely, "tenant build-out," "agency specials," and "retrofit items." For simplicity, these contract provisions will be collectively referred to as "the repair and alteration work."

3. The final decision cited the need to strengthen the building's floor load capacity to meet Uniform Building Code standards and level the floors to correct excessive floor deflections.

4. Pub.L. No. 95–563, 92 Stat. 2383, codified as amended at 41 U.S.C. §§ 601–613 (1988 & Supp. V 1993).

clause made disputes concerning the promised repair work subject to the CDA. *Id.* Relying in part on our holding in *Forman v. United States,* 767 F.2d 875, 879 (Fed.Cir. 1985) (board has jurisdiction over dual-purpose contract for the construction and lease of real property), the court held that the board had jurisdiction over Bonneville's appeal. *See* 41 U.S.C. § 602(a)(3) (CDA applies to contracts for the "procurement of construction, alteration, repair or maintenance of real property"). *Bonneville,* 30 Fed.Cl. at 87–89. The court therefore concluded that, because the board had jurisdiction over Bonneville's appeal, the Election Doctrine required dismissal of the case without prejudice for lack of subject matter jurisdiction. *Id.* at 89–90. Bonneville now appeals.

## DISCUSSION

Whether the Court of Federal Claims had jurisdiction in a CDA case is a question of law, which we review *de novo. Sharman Co. v. United States,* 2 F.3d 1564, 1568 (Fed.Cir. 1993); *Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir.1992).

Section 8(d) of the CDA provides that the boards of contract appeals "shall have jurisdiction to decide any appeal from a decision of a contracting officer ... relative to a contract." 41 U.S.C. § 607(d) (Supp. V 1993). Section 3 of the CDA limits the applicability of the statute, and thus the board's jurisdiction, to certain types of contracts:

§ 602 Applicability of law

(a) Executive agency contracts

Unless otherwise specifically provided herein, this chapter applies to any express or implied contract ... entered into by an executive agency for—

(1) the procurement of property, *other than real property in being;*

(2) the procurement of services;

(3) *the procurement of construction, alteration, repair or maintenance of real property;* or,

(4) the disposal of personal property.

41 U.S.C. § 602(a) (Supp. V 1993) (emphasis added).

Bonneville argues that the board lacked subject matter jurisdiction over its appeal and thus that Bonneville's filing of a notice of appeal with the board was not a binding election. Specifically, Bonneville points out that § 602(a)(1) excludes contracts for the "procurement of ... real property" from the CDA. The primary purpose of the contract, Bonneville argues, was to convey real property to the government. Bonneville further contends that the dispute between the parties concerned the government's procurement of the building, not the building's repair and alteration, because the CO's final decision relied in part on the contract's warranty clause.[5] Bonneville asserts that the warranty is inextricably linked to the sale of the building and thus the contract is excluded from the CDA under § 602(a)(1). As further support, Bonneville points out that paragraph 24 of the contract, which provides that disputes concerning Bonneville's obligation to perform the repair and alteration work shall be subject to the CDA,[6] does not state that disputes concerning the warranty of structural integrity are to be governed by the CDA. According to Bonneville, the parties recognized that warranty claims would be part and parcel of the sale of the building and could not be made subject to the CDA.

**5.** Paragraph 25 of the contract, entitled "WARRANTY OF SPECIFICATION AND STRUCTURAL INTEGRITY," provides, in relevant part:

The seller further certifies and guarantees the structural integrity of the building to be purchased by the Government hereunder, and agrees ... to correct any patent or latent defects in the structural integrity of the building discovered by the Government or its agents. The Government reserves the right to hold back a portion of the purchase price ... if the Seller fails to completely repair or otherwise correct any defect in structural integrity prior to closing. If the Government determines that

a structural defect may interfere with its intended use of the Property purchased hereunder, the Government shall also be entitled to consequential damages arising from said defect. Warranties under this paragraph shall be for five (5) years from closing on the purchase of the building.

**6.** Paragraph 24, entitled "DISPUTES FOR TENANT BUILD–OUT OR CHANGES," provides, in relevant part, "Any dispute arising from the work contemplated by Paragraphs 8, 9, and 11 hereof shall be governed by the Contract Disputes Act of 1978."

The government, on the other hand, contends that Bonneville's filing of a notice of appeal with the board was a binding election depriving the Court of Federal Claims of jurisdiction. The government characterizes the contract as a dual-purpose agreement for the purchase of a building and the performance of repair and alteration work. The government asserts that all disputed items raised in the CO's final decision concerned Bonneville's duty, under the warranty of structural integrity and other contract provisions, to repair and alter the building. Section 602(a)(3), the government points out, makes contracts for the procurement of "repair" and "alteration" of real property subject to the CDA. The government notes that, consistent with § 602(a)(3), the contract provides that any dispute involving the specified repair and alteration work would be governed by the CDA. The government reasons that, because the dispute only concerned Bonneville's duty to repair and alter the building, § 602(a)(3) gave the board jurisdiction over Bonneville's appeal and thus Bonneville's appeal to the board was a binding choice of forum. We agree with the government.

■ The CDA provides alternative forums for challenging a CO's final decision: a contractor may file an appeal with the appropriate board of contract appeals, 41 U.S.C. § 606 (1988), or appeal directly to the Court of Federal Claims, 41 U.S.C. § 609(a)(1) (Supp. V 1993). Courts have consistently interpreted the CDA as providing the contractor with an either-or choice of forum. *See National Neighbors,* 839 F.2d at 1542; *Santa Fe Eng'rs, Inc. v. United States,* 677 F.2d 876, 878, 230 Ct.Cl. 512 (1982). Thus, once a contractor makes a binding election to appeal the CO's final decision to a board of contract appeals or to the Court of Federal Claims, the contractor can no longer pursue its claim in the other forum. *National Neighbors,* 839 F.2d at 1542. The contractor's choice of forum is an important strategic decision, given the fundamental differences between the two forums. *See generally* John Cibinic, Jr. & Ralph C. Nash, Jr., *Administration of Government Contracts* 1003 (2d ed. 1986) (discussing the varying formality of proceedings, availability of accelerated procedures, etc.).

■ The Election Doctrine does not apply, however, if the forum originally selected lacked subject matter jurisdiction over the appeal. *National Neighbors,* 839 F.2d at 1542. In such case, no true choice of forum is available to the contractor and the Election Doctrine does not apply. *Id.; Olsberg Excavating Co. v. United States,* 3 Cl.Ct. 249, 252 (1983). For example, because the board lacks jurisdiction over an untimely appeal, the Election Doctrine would not invalidate a contractor's subsequent filing of an appeal in the Court of Federal Claims. *National Neighbors,* 839 F.2d at 1542.

■ The pivotal question here is whether the board possessed jurisdiction over Bonneville's initially filed appeal. To answer this question, we must examine the language of § 602(a). *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (language of statute governs absent clearly expressed legislative intent to the contrary); *Coastal Corp. v. United States,* 713 F.2d 728, 730 (Fed.Cir.1983) (stating that § 602(a) is unambiguous). Under the plain terms of § 602(a), the board has jurisdiction over contracts for the procurement of repair and alteration of real property, but lacks jurisdiction over contracts for the procurement of real property. A "procurement" is an acquisition by purchase, lease, or barter, of property or services for the direct benefit or use of the federal government. *New Era Constr. v. United States,* 890 F.2d 1152, 1157 (Fed.Cir.1989) (quoting *Mayer,* 84–2 B.C.A. (CCH) ¶ 17,494, 1984 WL 13451 (H.U.D.B.C.A. 1984)). The terms "real property," "repair," and "alteration" have commonly understood meanings that are not disputed.

■ Under the agreement in question, the government purchased an office building and received the fee simple title to the property. The contract conveyed a pre-existing real property interest to the government and did

not create a new property interest.[7] Thus, the contract was, in part, one for the "procurement of ... real property" within the meaning of § 602(a)(1). Apart from the government's procurement of the property, however, another important purpose of the agreement was the repair and alteration of the building to render it suitable for government use. We therefore conclude, as did the Court of Federal Claims, that the contract was *both* for the procurement and repair/alteration of real property.[8]

If one considers the nature of the contract, sections 602(a)(1) and 602(a)(3) both potentially apply. In view of the conflict posed by this dual-purpose contract, it is necessary to examine the nature of the dispute between the parties to resolve the jurisdictional issue. Bonneville does not question this analytical approach. Rather, the gravamen of Bonneville's argument is that, because the CO's final decision relied in part on the contract's warranty clause, the actual dispute between the parties concerned the procurement, not the repair and alteration, of the conveyed building.

■ We disagree. The warranty provision required Bonneville to *repair* any structural defects discovered by the government for a period of five years after the date of closing on the purchase of the building. The CO's final decision assessed damages, under the warranty clause and other contract provisions, based on Bonneville's failure to repair and alter the building as promised. Thus, the real dispute here concerned the extent of Bonneville's duty to repair and alter the building, not the government's procurement of the building. It did not involve such matters as title to the property, the consideration received for it, or other aspects of the conveyance, which would more clearly be disputes over the procurement of real property. Because the dispute between the parties only concerned Bonneville's duty to repair and alter the building, § 602(a)(3) conferred jurisdiction on the board to hear Bonneville's appeal.

■ Bonneville asserts that Paragraph 24 limits the applicability of the CDA to Paragraphs 8, 9, and 11. However, the fact that the contract expressly stipulated in Paragraph 24 that any dispute arising out of the work under Paragraphs 8, 9, and 11 would be governed by the CDA is not inconsistent with a conclusion that other disputes arising under the contract are also determined by statute to be subject to the CDA. Moreover, the fact that the CDA is expressly referenced in the contract underlines the conclusion that the contract is in part governed by the CDA.

Even assuming, *arguendo,* that the government's warranty claim were inseparable from the procurement of the building, this does not mean that the board lacked jurisdiction over Bonneville's appeal. The contract was still not only for the procurement of the building, but also for its repair and alteration. In *Forman,* we held that a dual-purpose agreement for the construction and lease of a building was governed by the CDA.[9] *Forman,* 767 F.2d at 879. Our holding was partly based on the fact that "the lease was part of a larger agreement," namely a building construction contract, "over which the Board plainly does have jurisdiction." *Id.* We recognized that it would be

---

7. In *Forman,* we held that the CDA's exclusion of contracts for the "procurement of ... real property" applies only to the acquisition of pre-existing interests and does not apply to contracts that create a new property interest, such as a leasehold, at the time of contracting. *Forman,* 767 F.2d at 879.

8. The legislative history of § 602(a) does not change our analysis. As we noted in *Forman,* 767 F.2d at 878:

The legislative history of the Disputes Act contains little illuminating Congress' intended meaning of the phrase "real property in being." The committee reports are silent. We are directed to the debate on the floor of the House of Representatives, in which Congress-

man Kindness remarked: "The procedures and remedies set down in the bill are applicable to all express or implied contracts entered into by the United States for (1) the procurement of property (other than real property in being which is governed by the laws of eminent domain)." 124 Cong. Rec. 31,645 (1978). This morsel is not a sufficient explanation of the statute's purpose or meaning for it to be highly persuasive in this case.

9. The Formans agreed to build a postal facility in Hollywood, Florida; in exchange, the Postal Service agreed to enter into a long-term lease of the facility. *Forman,* 767 F.2d at 877.

incongruous for the board to have jurisdiction to construe one part of the contract, but not the other. *Id.*

We think a similar result follows here. The agreement to convey the building to the government was part of a larger agreement in which Bonneville promised to repair and alter the building to render it suitable for government use. The CO's final decision assessed damages not only for alleged structural defects, but also for Bonneville's failure to improve the HVAC system's cooling capacity. Bonneville's promise to modify the HVAC system and perform other repair and alteration work made the contract, in substantial part, one for the "procurement of ... alteration [and] repair" of real property, within the board's jurisdiction under § 602(a)(3). It would be inconsistent with the remedial purpose of the CDA for the board to have jurisdiction over the government's claim stemming from Bonneville's promise to modify the HVAC system but not over that based on the warranty clause. We doubt that Congress intended such a piecemeal adjudication of these closely related disputes. Thus, even assuming the government's warranty claim was, in a sense, inseparable from its procurement of the building, we hold that the board had jurisdiction over the entire appeal. *Accord Korman Corp.,* 82–2 B.C.A. (CCH) ¶ 16,044, 1982 WL 7783 (H.U.D.B.C.A.1982) (contract for the sale and repair of real property held to be within the CDA).

The Election Doctrine requires not only that the elected forum possess subject matter jurisdiction over the appeal, but also that the contractor's choice of forum be "informed, knowing and voluntary." *Mark Smith Constr. Co. v. United States,* 10 Cl.Ct. 540, 544 (1986) (quoting *Prime Constr. Co. v. United States,* 231 Ct.Cl. 782 (1982)). The Court of Federal Claims found that Bonneville's election was informed, knowing, and voluntary because Bonneville was advised of its appeal rights under the CDA. *Bonneville,* 30 Fed.Cl. at 90. On appeal to this court, Bonneville does not challenge this finding. Thus, we need not reach this issue.

We have considered Bonneville's other arguments and find them not persuasive.

## CONCLUSION

The board had jurisdiction over Bonneville's appeal because the dispute between the parties concerned Bonneville's alleged breach of its duty under the warranty clause and other contract provisions to repair and alter the conveyed building. The government's procurement of the building was not in dispute. Even assuming the government's warranty claim was inseparable from its procurement of the building, the board had jurisdiction over the entire appeal. Accordingly, the Court of Federal Claims properly applied the Election Doctrine to dismiss Bonneville's action without prejudice for lack of subject matter jurisdiction. The decision of the Court of Federal Claims is affirmed.

*AFFIRMED.*