**UNITED STATES of America, Plaintiff,**

v.

**ROARDA, INC., Defendant.**

**Civ. A. No. Y-86-3219.**

United States District Court,
D. Maryland.

Oct. 21, 1987.

Breckinridge L. Willcox, U.S. Atty., State of Md., and J. Sedwick Sollers, III, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Kenneth S. Kramer, Washington, D.C. and Jack B. Gordon, Washington, D.C., for defendant.

MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The United States government has filed suit against its marine fuel supply contractor, Roarda, Inc., to enforce Contracting Officer Pagan's final decision dated April 6, 1983, which held Roarda liable for ten demurrage[1] claims totaling $349,834.34 plus accrued interest. Currently, the government moves for summary judgment, claiming that the Court must summarily enforce the contracting officer's decision pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 605(b) (Supp.1987), because Roarda did not file an appeal.

*Background*

The facts of this case are not in dispute. On July 16, 1981, the government's Defense Fuel Supply Center ("DFSC")[2] entered Contract No. DLA600–81–D–0473 ("Contract") with Roarda whereby Roarda agreed to deliver approximately 129,265,-000 gallons of diesel, marine fuel to government tankers in Texas. Clause H52(e) of the Contract provided the allowed laytime for Roarda in loading the government ships. Each time Roarda exceeded

---

1. "Demurrage" is compensation for unnecessary delay in the loading or unloading of a vessel. *See generally* G. Gilmore & C. Black, *The Law of Admiralty* 210–11 (2d ed. 1975).

2. The DFSC is an organization within the United States Department of Defense that purchases and manages coal and petroleum products for the government.

the established time limit, it was required to pay the government demurrage pursuant to Contract clause H52(f).

Roarda made ten late fuel loadings. Each time, the DFSC notified the company by letter that it was liable for demurrage. The DFSC mailed Roarda two follow-up letters for each claim; however, Roarda refused to pay all ten demurrage charges.

On February 17, 1983, DFSC Contracting Officer Pagan issued a final decision which held Roarda liable to the government for demurrage claims totaling $325,877.38 plus accrued interest. She later issued a revised final opinion on April 6, 1983, holding Roarda responsible for $327,258.38 in demurrage plus accrued interest. Despite notice in the final decision letters regarding its right to appeal, Roarda failed to challenge these decisions. Accordingly, the government has sued to enforce the contracting officer's final decision.

### The Contract Disputes Act of 1978

The Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 *et seq.* (Supp. 1987), applies to "any express or implied contract entered into by an executive agency for the procurement of property, other than real property," 41 U.S.C. § 602(a)(1), after March 1, 1979. Publ.L. No. 95–563, § 2, 92 Stat. 2383 (1979). Accordingly, this statute is applicable to the Contract *sub judice* which was formed on July 16, 1981.

Under the CDA, all contractual claims between the government and its contractor are submitted to the contracting officer for a decision. 41 U.S.C. § 605(a). The contracting officer's decision is final and not reviewable "by any forum, tribunal, or Government agency," 41 U.S.C. § 605(b), unless it is appealed to the Board of Contract Appeals within ninety days, 41 U.S.C. § 606, or to the United States Claims Court within twelve months. 41 U.S.C. § 609(a). The contracting officer's final decison letter must inform the contractor of these rights of appeal. 41 U.S.C. § 605(a).

### Summary Judgment Motion

In its motion for summary judgment, the government asserts that the contracting officer's final decision letters notified Roarda of its right to appeal pursuant to 41 U.S.C. § 605(a), that Roarda failed to appeal, and thus the contracting officer's decision is final and not reviewable. 41 U.S.C. § 605(b). In *United States v. Dabbs,* 608 F.Supp. 507 (S.D.Miss.1985), the court granted summary judgment in favor of the government to enforce a contracting officer's final decision which was not appealed in compliance with the CDA. Relying on the CDA, as well as *Lichter v. United States,* 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948), and *United States v. Ulvedal,* 372 F.2d 31 (8th Cir.1967), which were decided before the CDA was enacted, but involved similar contract dispute clauses, the court concluded, "It is clear that the CDA provides the exclusive method for challenging the final decision of the Contracting Officer, and that this Court is without jurisdiction to consider challenges to such decisions." *Dabbs,* 608 F.Supp. at 509.

Roarda argues based on *United Aero, Inc.,* ASBCA No. 26967 (1983), that the contracting officer's decision was not final, and thus not subject to enforcement, because the government had not actually incurred any contractual damages. In *United Aero,* the Board of Contract Appeals provided:

[T]he Board understands the law to have long been clear that contracting officers have not had, and do not have, the power to issue procedurally valid disputes article decisions, which could become final if not appealed, unless, *inter alia,* there has previously been a dispute concerning a question of fact arising under the contract to decide. Based on the implementing regulations, the rule is comparable under the Contract Disputes Act with respect to claims 'relating to a contract.' The Board also understands it to have long been clear as a matter of substantive law, leaving jurisdictional considerations aside, that contractors are not liable for excess repurchase costs and interest thereon pursuant to the standard Default clause unless and until the Government has actually incurred such costs.

In the particular case of excess cost assessments, therefore, not only do such claims lack merit where such costs have not been incurred; but until incurred, some of the facts on which to base such claims are not in existence, and a dispute about them cannot be decided.

*Id.* (citations omitted).

However, the Contract between Roarda and the government did provide in Clause H52(f) a schedule of demurrage rates for delays in vessel loading. Although these rates took the form of liquidated damages, they were designed to approximate and not exceed the actual damage costs involved with such delay. *See, e.g.,* Clause H52(f)(1). Furthermore, even if Roarda asserts a viable argument, the company had ample opportunity to raise it before the Board of Contract Appeals or the Claims Court on appeal pursuant to the CDA. Since Roarda chose not to file an appeal, the contracting officer's final decision stands and may not be reviewed by this Court. 41 U.S.C. § 605(b).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the United States Supreme Court provided:

> [A]t the summary judgment stage, the judge's function is not himself to weight the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.

(citations omitted). Since Roarda has not provided any evidence which might lead a jury to return a verdict in its favor, the Court grants the government's motion for summary judgment.