UNITED STATES of America,
Plaintiff–Appellee,

v.

KASLER ELECTRIC COMPANY,
INC., Defendant–Appellant,

Fireman's Fund Insurance Companies,
Defendant.

No. 96–1087.

United States Court of Appeals,
Sixth Circuit.

Argued: Feb. 7, 1997.

Decided: Aug. 25, 1997.

Elizabeth W. Fleming (briefed), Office of the U.S. Attorney, Detroit, MI, Christopher P. Yates (argued), Federal Public Defenders

Office, Grand Rapids, MI, for Plaintiff–Appellee.

Leigh H. Savage (argued and briefed), Eastpointe, Michigan, for Kasler Electric Co., Inc.

Robert G. Russell, Kerr, Russell & Weber, Detroit, MI, for Fireman's Fund Ins. Companies.

Before: NORRIS and MOORE, Circuit Judges; RUSSELL, District Judge.[*]

KAREN NELSON MOORE, Circuit Judge.

Defendant–Appellant Kasler Electric Co. ("Kasler") appeals the district court's order granting summary judgment in favor of Plaintiff–Appellee United States in this action to enforce the final decision of a government contracting officer.[1] Kasler contends that the decision was not a valid "final decision" within the meaning of the Contract Disputes Act of 1978(CDA), Pub.L. No. 95–563, 92 Stat. 2383; in the alternative, Kasler argues that the government should be estopped from asserting that Kasler did not seek review of the decision as provided in the CDA.

## I. BACKGROUND

The facts underlying the contract dispute itself may be succinctly stated. In brief, the Veterans Administration contracted with Kasler for installation of a fire alarm system in a V.A. hospital in Michigan in 1982. After various disputes involving performance of the contract, the government contracting officer issued a decision terminating the contract for default; Kasler received notice of the decision on May 4, 1987. The government later contracted with another company to complete installation of the fire alarm system.

On May 4, 1988, Kasler filed suit in the United States Claims Court[2] challenging the 1987 decision and seeking $322,198.77, including $127,961.08 remaining on the contract and $194,237.69 for "extra work performed not in our contract." Joint Appendix (J.A.) at 68; see also J.A. at 127. During the pendency of the litigation, the contracting officer issued another decision on November 5, 1990, determining the costs of excess reprocurement (the difference between the amount Kasler owed on the unfinished contract and the amount of the second contract with another company to complete the job) and ordering Kasler to pay those costs, which totaled $131,111.88. J.A. at 53. On November 21, 1990, the United States filed a counterclaim seeking to enforce the decision regarding reprocurement. Although Kasler asserted defenses against that counterclaim, it did not seek review of the decision by the Veterans Administration Board of Contract Appeals (VABCA) or file a separate suit in the Claims Court. Appellant's Br. at 9.

On April 30, 1992, the Claims Court dismissed Kasler's claim without prejudice, for lack of subject matter jurisdiction, since the plaintiff had not submitted a CDA "claim" to the contracting officer, as was required for jurisdictional purposes. Kasler Elec. Co. v.

---

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1. Defendant Fireman's Fund is not a party to this appeal, since the district court denied the government's motion for summary judgment as to Fireman's Fund. The district court expressly determined that there was no just reason for delaying review as to Kasler, and directed the entry of final judgment as to Kasler only, so we have jurisdiction over this appeal. R. 61; FED.R.CIV.P. 54(b). Subsequently, the district court entered an order pursuant to a stipulation dismissing the claims against Fireman's Fund. R. 76.

2. The United States Claims Court, established pursuant to Article I of the United States Constitution, was the successor to the original (trial)

jurisdiction of the United States Court of Claims, an Article III court. Federal Courts Improvement Act of 1982 (FCIA), Pub.L. No. 97–164, 96 Stat. 25. The FCIA also combined the appellate division of the Court of Claims with the Court of Customs and Patent Appeals to form the United States Court of Appeals for the Federal Circuit, an Article III court. Precedents from the Court of Claims (cited as Ct. Cl.) were binding authority on the Claims Court (Cl.Ct.). See West Seattle Gen. Hosp., Inc. v. United States, 1 Cl.Ct. 745, 746 (1983). In 1992 Congress changed the name of the Claims Court to the United States Court of Federal Claims (Fed.Cl.). Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, tit. IX, § 902, 106 Stat. 4516; Continental Collection & Disposal, Inc. v. United States, 29 Fed. Cl. 644, 650 n. 2 (1993).

*United States,* No. 267–88C (Cl.Ct. April 30, 1992); J.A. at 66. Because the Claims Court did not have subject matter jurisdiction over the plaintiff's claims, the government's counterclaim was necessarily dismissed for lack of jurisdiction. *Kasler,* No. 267–88C, slip op. at 9 n.9; J.A. at 74. *See Mulholland v. United States,* 175 Ct.Cl. 832, 361 F.2d 237, 245 (1966):

> [A]s the Court of Claims is generally without authority to adjudicate claims by the United States against other persons, it has been held that where the United States has asserted in this court a counterclaim against a plaintiff and the plaintiff's claim is rejected because of a lack of jurisdiction, the counterclaim must be dismissed along with the plaintiff's petition, without regard to the merits of the counterclaim.

*See also Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 508 F.2d 817, 822 (1974).

In the Claims Court litigation, Kasler and the government stipulated to the existence of the November 5, 1990 decision of the contracting officer and the notification of Kasler. *See* J.A. at 59 (Joint Mem. Re: Stipulations at ¶ 18). Although the government incorrectly contends that the previous stipulation "conclusively establishe[s]" notice, Appellee's Br. at 9, the record and various motions and briefs in this litigation indicate that Kasler challenges the validity of the decision on other grounds and does not appear to challenge the decision's existence and Kasler's notice thereof. *See generally* Appellant's Br.; J.A. at 156–68.

On August 25, 1992, the contracting officer, for reasons that are not clear (and that even the contracting officer claimed not to know[3]), sent another copy of the November 5, 1990 decision to Kasler. The government presented an affidavit from the contracting officer stating that she had placed a copy of the decision, properly addressed, in the mail to Kasler's president, its attorney, and the bond surety. J.A. at 43–44. Kasler presented affidavits from its president, its counsel, and its codefendant's counsel stating that they never received a copy dated August 1992, and that they had received no claim for payment from the government since before April 30, 1992 (i.e., they had received no claim for payment after the end of the period during which they contend the contracting officer lacked authority to issue a decision). J.A. at 169, 171, 178.

The United States filed this action in the district court on August 17, 1994, seeking a judgment to enforce the 1990 decision. The district court granted summary judgment in favor of the United States, holding that the final decision was "valid, final and unreviewable under [41 U.S.C.] § 609." J.A. at 380.

## II. ANALYSIS

■ This court reviews a grant of summary judgment de novo. *Shahid v. Ford Motor Co.,* 76 F.3d 1404, 1408 (6th Cir.1996). Summary judgment is appropriate if there is no genuine dispute as to a material fact and if the movant is entitled to a judgment as a matter of law. *Id.*

■ The government sought a judgment to enforce the contracting officer's 1990 decision for purposes of collecting the reprocurement costs. The CDA divests the federal district courts of jurisdiction over contractors' disputes with the government. S.REP. No. 95–1118, at 33 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5267; *McDonnell Douglas Corp. v. United States,* 754 F.2d 365, 370 (Fed.Cir.1985).[4] A contractor who contests a contracting officer's decision has a choice between only two exclusive remedies: it may appeal the decision to an agency board of contract appeals (BCA) within ninety days from the date of receipt of the decision, or it may "bring an action directly on the claim in the United States Court of Federal Claims . . ." within twelve months from the date of receipt. 41 U.S.C. §§ 606, 609(a), (c); *Sea-*

---

3. "Following the dismissal of the Claims Court litigation, I was told to send another notification of excess reprocurement costs to Kasler Electric. I don't know who told me to do this or why. . . ." J.A. at 43 (Presnell Aff. at ¶ 7).

4. The Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals from agency boards of contract appeals in CDA cases and from the Court of Federal Claims (formerly the Claims Court). 28 U.S.C. § 1295(3), (10). For that reason, most of the authority in this case is from that circuit.

*board Lumber Co. v. United States*, 903 F.2d 1560, 1562 (Fed.Cir.1990), *cert. denied*, 499 U.S. 919, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991). Under the CDA, a contracting officer's decision becomes "final and conclusive and not subject to review by any forum, tribunal, or Government agency" if the contractor does not timely pursue one of those remedies. 41 U.S.C. § 605(b); *see also* FAR 52.233–1(f) (48 C.F.R. § 52.233–1(f)) [5] (including a disputes clause in all government contracts that makes the contracts subject to the CDA and provides that "[t]he Contracting Officer's decision [on a claim] shall be final unless the Contractor appeals or files a suit as provided in the Act.").

■ Though the merits of the contracting officer's decision itself were not within the jurisdiction of the district court, the government merely sought summary enforcement of an order that it contends is final and unreviewable. *See Seaboard Lumber*, 903 F.2d at 1562 & n. 4 ("The government may obtain a judgment on the basis of such decision in a state or federal court without litigating the merits."); *see also United States v. Suntip Co.*, 82 F.3d 1468, 1474 (9th Cir. 1996) ("[T]he contracting officers' decisions are now [final and unreviewable].... For most practical purposes, then, the government's present suit is similar to a suit on a judgment, because the merits of the officers' decisions are not subject to attack."), *cert. denied*, —— U.S. ——, 117 S.Ct. 942, 136 L.Ed.2d 832 (1997); *United States v. Roarda, Inc.*, 671 F.Supp. 1084 (D.Md.1987) (granting the government's motion for summary judgment to enforce a final decision against a contractor). Nothing in the statute, however, appears to prevent the district court, and this court on appeal, from evaluating the finality and unreviewability of the

decision itself as a matter of law. Clearly, the United States could not bring suit on the decision in the Court of Federal Claims, which, with the Federal Circuit (to which appeals from the Court of Federal Claims are pursued), is the source of most of the applicable precedent in this area. *See, e.g., Mulholland*, 361 F.2d at 245 ("[T]he Court of Claims is generally without authority to adjudicate claims by the United States against other persons....").[6] Therefore, *only* a district court would have the opportunity to assess the finality and unreviewability of an order if the issue first arose in a government-instituted action to enforce the order.

Furthermore, the Ninth Circuit's analogy to a suit on a judgment is apt. A court asked to enforce a money judgment rendered by a court in another jurisdiction generally cannot reconsider the merits of the prior decision; the court can, however, consider such matters as notice to the defendant and the finality of the judgment. *See generally* RESTATEMENT (SECOND) OF CONFL. OF LAWS §§ 100, 104, 106, 107 (1971). Similarly, a court deciding whether to enforce a final decision of a contracting officer must be able to consider issues not related to the merits, such as notification of the contractor and the contractor's failure to appeal.

Although the government protests in its brief that Kasler is seeking to obtain fact-finding jurisdiction in the district court, and contends that the divestment of such jurisdiction by the CDA bars the district court from finding a genuine dispute as to a material fact, the only issues raised in this appeal involve the validity and finality of the order itself, rather than the facts underlying the merits. Certainly, the district court could not evaluate disputes as to the merits of the

---

5. Title 48, chapter 1 of the Code of Federal Regulations contains the Federal Acquisition Regulations (FAR). Courts, BCAs, and government contracts lawyers use a special citation form that does not refer to the C.F.R. (e.g., FAR 52.233–1). We will follow the citation method recognized within the field.

6. *See also* 28 U.S.C. § 1491(a)(1) (granting the Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States" based on the Constitution, federal statutes or regulations, or contracts with the United

States, or seeking damages against the United States in non-tort cases); 28 U.S.C. § 1491(a)(2) (granting the Court of Federal Claims jurisdiction "to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act [41 U.S.C. § 609(a)(1), which provides for a contractor to bring an action]...."); 28 U.S.C. § 1345 (placing original jurisdiction of suits in which the United States is the plaintiff in the district courts).

contract dispute itself, such as the legitimacy of the government's reasons for terminating the contract, or the reasonableness of the reprocurement costs incurred. Nevertheless, the CDA's divestment of federal court jurisdiction over government contract disputes does not mean that a federal court must rubber-stamp a final decision without being able to assess the finality and unreviewability of that decision—i.e., the threshold question of the applicability of § 605(b). *See, e.g., United States v. Dabbs,* 608 F.Supp. 507 (S.D.Miss.1985) (considering only whether the contractor received notice of the final decision); *Roarda, Inc.,* 671 F.Supp. at 1086 (noting that the contractor had not appealed the decision to the Board of Contract Appeals or to the Claims Court, so the decision had become final and unreviewable); *United States Postal Service v. Temple University,* No. CIV.A. 93–3378, 1994 WL 29592 (E.D.Pa. Jan. 28, 1994) (considering whether the contractor received a copy of the final decision; granting summary judgment in favor of the government because the contractor had failed to appeal the decision pursuant to the CDA). For these reasons, we hold that a federal district court, and this court on appeal, can decide whether a decision of a government contracting officer is final and unreviewable under 41 U.S.C. § 605(b); we cannot, however, consider the merits underlying that decision.

## A. The Authority of the Contracting Officer to Issue the Decision in November 1990

■ Kasler contends that the final decision was void when issued in 1990 because the pending litigation in the Claims Court divested the contracting officer of authority to issue a final decision on the matter. Kasler bases its argument on *Sharman Co. v.*

*United States,* 2 F.3d 1564 (Fed.Cir.1993).[7] *Sharman* held that once a claim was the subject of litigation, the Justice Department had exclusive authority over the matter and the contracting officer was divested of authority to issue a final decision on that claim; any final decision on the claim issued during the litigation was "without authority and consequently ... a nullity." 2 F.3d at 1571–72. Relying on *Sharman,* Kasler argues that when it brought suit in the Claims Court challenging the 1987 decision terminating the contract for default, the contracting officer was divested of authority to issue the decision on reprocurement costs; therefore, Kasler contends that no decision rendered during the pendency of the litigation (between May 4, 1988 and April 30, 1992) was valid.

Under the Ninth Circuit's analogy to a suit to enforce a judgment, *see Suntip Co.,* 82 F.3d at 1474, the authority of the contracting officer to issue the final decision which the government now asks this court to enforce arguably is analogous to the subject matter jurisdiction of the rendering court, which the second, enforcing court might consider. *See, e.g.,* RESTATEMENT (SECOND) OF JUDGMENTS § 1 (1982) ("Requisites of a Valid Judgment" are subject matter jurisdiction in the rendering court, adequate notice to the party against whom judgment is to be rendered, and territorial jurisdiction, unless the party has submitted to the court's jurisdiction); *id.* § 81 (1982) (defining "Invalid Judgment"); RESTATEMENT (SECOND) OF CONFL. OF LAWS § 92 (1971) ("Requisites of a Valid Judgment"). *But see* Karen Nelson Moore, *Collateral Attack on Subject Matter Jurisdiction: A Critique of the* Restatement (Second) of Judgments, 66 CORNELL L.REV. 534 (1981) (suggesting that "subject matter jurisdiction generally should be treated like most other issues for res judicata purposes").

---

7. Though the government contends that *Sharman* has been overruled by *Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed.Cir.1995), *Reflectone* itself does not support that assertion. In addition to the point for which Kasler cites *Sharman, Sharman* also held, in a different section of its analysis, that a claim was not a "claim" for purposes of FAR 33.201 unless it was disputed at the time it was submitted to the contracting officer. 2 F.3d at 1571. *Reflectone* overruled only that aspect of *Sharman.* 60 F.3d at 1579 & n. 10

("To the extent that *Dawco* and its progeny [citing page 1571 of *Sharman* in the footnote] have been read to also hold that, based on FAR 33.201, a 'claim' ... must already be in dispute when submitted to the CO, they are hereby overruled."). The holding for which Kasler cites *Sharman,* however, was not affected by *Reflectone.* Indeed, the Federal Circuit recently discussed the *Sharman* doctrine in *Case, Inc. v. United States,* 88 F.3d 1004, 1009–10 (Fed.Cir. 1996).

The analogy, however, is undermined by the CDA's specific statutory limitation on the contractor's avenues for seeking review. The provisions of the CDA allowing a contractor to dispute the government's claims regarding a contract are specific, unambiguous, and exclusive; the statute clearly states that a contractor may seek review of a final decision *only* in a board of contract appeals or in the Court of Federal Claims. 41 U.S.C. §§ 605(b), 606, 609(a). Absent commencement of such review within the prescribed period of time, the decision becomes impervious to any substantive review. 41 U.S.C. § 605(b).

The CDA is intended to keep government contract disputes out of district courts; it limits review of the merits of government contract disputes to certain forums, both to limit the waiver of sovereign immunity and to submit government contract issues to forums that have specialized knowledge and experience. *See, e.g., Seaboard Lumber*, 903 F.2d at 1566–67 ("[T]he complaints in this appeal are pursuant to a structural system set up by the CDA, which is dependent on waiver of sovereign immunity.... It is not disputed that the government may condition its consent to suit upon a plaintiff suing only in an Article I court...."); *Bank of Am. Nat'l Trust and Sav. Ass'n v. United States*, 23 F.3d 380, 387 (Fed.Cir.1994) ("Under the CDA, the government waived its right to assert sovereign immunity against ... contractual claims in return for the contractor's waiver of his right to an Article III trial of government claims against him."); *Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 78 (D.C.Cir.1985) ("[Government contract issues] are within the unique expertise of the Court of Claims.... This complaint ... calls for knowledge of the government contracting process. In these circumstances, we must implement the congressional intent to provide a single, uniquely qualified forum for the resolution of contractual disputes.") (footnote omitted); *Quality Tooling, Inc. v. United States*, 47 F.3d 1569, 1580 (Fed.Cir.1995) (referring to "the interest expressed in the CDA in resolving government contract claims in familiar, and expert, fora"); *see also SMS Data Prods. Group, Inc. v. United States*, 900 F.2d 1553, 1555 (Fed.Cir.1990) (recognizing an agency BCA's "expertise in interpreting [government] contract regulations"). Holding that district courts may engage in inquiries as to the authority of a contracting officer at any given time would unnecessarily and unjustifiably mire district courts in precisely the kind of substantive review of government contract matters that the Act seeks to limit to a special statutory scheme.

Because the language of 41 U.S.C. § 605(b) clearly imparts finality and unreviewability on a contracting officer's decision that is not properly appealed, and makes no mention of the contracting officer's authority to issue the decision, we hold that challenges to the existence of that authority, like the merits of the dispute, can only be pursued through the statutorily provided means. The district court, and this court on appeal, may inquire only as to the finality and unreviewability of the decision that was issued—i.e., whether the contractor received notice of a final decision, and whether it timely commenced an appeal or suit in one of the provided forums.

### B. Defense Against the United States' Counterclaim in the Previous Litigation as a Substitute for a Direct Suit

Kasler contends that the 1990 decision is not final and unreviewable because Kasler did challenge it, in effect, within the applicable time period. According to Kasler, the government's introduction of the reprocurement issue into the Claims Court litigation as a counterclaim effectively substituted for a challenge by Kasler to the 1990 decision under the CDA. Kasler argues that the government should be estopped from asserting that Kasler did not challenge the 1990 decision for purposes of 41 U.S.C. § 605(b) because "the Government itself put the matter into litigation for Kasler" by raising the counterclaim in the Claims Court. Appellant's Br. at 27–28. The district court dismissed this argument with little discussion, noting that Kasler had cited no authority for its interpretation of 41 U.S.C. § 609. We agree with the district court's disposition. Kasler cited no authority to support its argu-

ment because there is none; indeed, its argument is unsupportable.

Section 605(b) provides that a decision becomes final and unreviewable "unless an appeal or suit is timely commenced as authorized by this chapter." The statute then "authorizes" only two exclusive options. "Within ninety days from the date of receipt of a contracting officer's decision under section 605 of this title, the contractor may appeal such decision to an agency board of contract appeals...." 41 U.S.C. § 606. "[I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action *directly on the claim* in the United States Court of Federal Claims...." 41 U.S.C. § 609(a)(1) (emphasis added).[8] "Any action under paragraph (1) ... shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim...." 41 U.S.C. § 609(a)(3). *See also* S.Rep. No. 95–1118, at 1–3, 11–12, 29 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5235–37, 5245–46, 5263.

The meaning of § 609(a) is clear:. a contractor may challenge a decision by suing "directly" in the Court of Federal Claims *with regard to that claim.* Though Kasler asks this court to read § 609(a) as allowing a

defense to a counterclaim to suffice as a direct suit, such an interpretation defies the plain meaning of the statutory language. In this case, the counterclaim was not on the same claim that had originated the suit[9]; Kasler's attempt to link the two using the Federal Rules of Civil Procedure, citing the liberal joinder policy aimed at eliminating multiple litigation, does not transform the defense to a counterclaim into an original complaint.[10]

We note that the Federal Rules of Civil Procedure do not apply to the Court of Federal Claims, which has established its own rules, found in Title 28 of the United States Code. The Rules of the Court of Federal Claims are based on the Federal Rules of Civil Procedure, with some adaptations to reflect the court's unique jurisdictional constraints. *See* R. Ct. Fed. Cl. 1(b); John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts 1314 (3d ed.1995). The language of Rule of the Court of Federal Claims 13 closely tracks the language of Federal Rule of Civil Procedure 13, concerning counterclaims; nevertheless, given the uniqueness of the Court of Federal Claims, and especially of the specific procedures codified by the CDA,[11] we doubt the wisdom of applying the broad policies underlying the Federal Rules to this case, as Kasler urges. Kasler contends that the govern-

8. Prior to its amendment by the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, tit. IX, § 902(b)(1), 106 Stat. 4516, § 609(a)(1) authorized suit in the United States Claims Court. *See* supra.note 2.

9. Kasler brought the suit to challenge the contracting officer's 1987 decision terminating the contract for default; the government's counterclaim was based on the contracting officer's 1990 decision assessing excess reprocurement costs.

10. Though we base this part of our holding on the implausibility of Kasler's argument under the CDA, we also note, as did the district court, that even if Kasler's defense against the government's counterclaim could be construed as satisfying § 609, the entire Claims Court litigation, including the counterclaim and the defenses against it, was dismissed without prejudice for lack of jurisdiction. Kasler took no action on the reprocurement issue after the dismissal, which occurred almost two years before the United States filed this action to collect; therefore, it cannot reasonably be deemed to have pursued either of the

alternative remedies under the CDA to avoid finality.

11. Significantly, the CDA allows a contractor to pursue different remedies for separate claims arising from the same contract. *See, e.g.,* 41 U.S.C. § 609(d) (permitting consolidation of separate suits arising from the same contract filed in different forums); 41 U.S.C. § 609(e) (permitting judgment as to fewer than all claims brought in a single suit based on one contract); S.Rep. No 95–1118, at 30–31, *reprinted in* 1978 U.S.C.C.A.N. 5264–65 (stating that splitting of causes of action should be kept to a minimum, but that the Court of Claims should "be sensitive to the reasons why the suits have been split"); *see also D. Moody & Co. v. United States,* 5 Cl.Ct. 70, 77 (1984) (noting that § 609(d) and (e) "are consistent with the objective of requiring a contractor to appeal individual claims as they arise"). The CDA, therefore, departs from the general policy in federal civil procedure prohibiting the splitting of claims, and from the "liberal joinder policy" of Federal Rule of Civil Procedure 13 cited by Kasler. *See* Appellant's Br. at 30.

ment's introduction of the issue of excess reprocurement costs into litigation in the Claims Court, in the form of a counterclaim, is the functional equivalent of Kasler having brought in the issue itself. Kasler, in essence, asks this court to hold that the broad aims of the Federal Rules of Civil Procedure, facilitating the management and, where possible, consolidation of ordinary civil litigation, trump the specific intentions of Congress in establishing a detailed statutory scheme for handling a highly specialized class of disputes. Given the policies and procedures of the Contract Disputes Act, we decline to issue such a sweeping holding.

The CDA gives the contractor the choice between the two available forums for review; "the result [is] that the Government has no right to determine the forum in which its claims will be litigated." CIBINIC & NASH, supra, at 1304. By choosing to challenge a contracting officer's decision in one forum, the contractor is precluded from seeking review in the other. See National Neighbors, Inc. v. United States, 839 F.2d 1539, 1541–43 (Fed.Cir.1988) (discussing the Election Doctrine, which holds that the contractor's choice of a forum that has jurisdiction is a binding election); CIBINIC & NASH, supra, at 1306 (same). See also Bonneville Assocs. v. United States, 43 F.3d 649, 653 (Fed.Cir.1994) ("Courts have consistently interpreted the CDA as providing the contractor with an either-or choice of forum.").

Therefore, the selection of the forum is a particularly significant strategic choice that the CDA leaves to the contractor:

Numerous consequences can result from the contractor's election of a forum, including the degree of formality of the proceedings, availability of accelerated procedures, possibility of recovery of Equal Access to Justice Act attorneys' fees, scope of review by the Court of Appeals for the Federal Circuit, and presence or absence of precedent or recent decisions on similar issues.

12. The Election Doctrine applies only when the chosen forum has jurisdiction over the proceedings. National Neighbors, 839 F.2d at 1542–43. We recognize that in this particular case, Kasler would not be bound by the government's "election" of the Claims Court by assertion of the

Thus, the selection of a forum is an important decision.

CIBINIC & NASH, supra, at 1305–06. See also Bonneville Assocs., 43 F.3d at 653 ("The contractor's choice of forum is an important strategic decision, given the fundamental differences between the two forums [a BCA and the Court of Federal Claims]."); Dorn C. McGrath III, The Transfer and Consolidation Provision of the Contract Disputes Act, 15 PUB. CONT. L.J. 256, 275–76 (1985) (listing some such differences). Congress specifically established the dual system to permit contractors to weigh their own needs in making that decision:

Justice and efficient operation of the contract disputes-resolving system can be obtained best with a flexible system that provides alternative forums for resolution of particular kinds of disputes. The claimant should be able to choose a forum according to the needs of his particular case; that is, one where the degree of due process desired can be balanced by the time and expense considered appropriate for the case. To this end, alternate forums, each with special characteristics, should be maintained for initial resolution of disputes above the contracting officer and informal agency review level.

S.REP. No. 95–1118, at 13, reprinted in 1978 U.S.C.C.A.N. 5247.

To hold that defending against a government counterclaim is the functional equivalent of bringing a direct suit in the Court of Federal Claims would be to rob contractors of that strategic choice—if the government raised a counterclaim based on a contracting officer's decision and the contractor defended against it, the contractor would lose the option of seeking review in a BCA pursuant to 41 U.S.C. § 606.[12] The government would have the power to limit the contractor to the Court of Federal Claims merely by asserting a counterclaim.

counterclaim, since the Claims Court held that it did not have jurisdiction over the counterclaim. Nevertheless, the holding that Kasler advocates would subvert the CDA and would establish a dangerous precedent.

Kasler neither sought review of the 1990 decision in the Veterans Administration BCA within ninety days nor brought an action directly on the claim in the Claims Court within twelve months. We hold that because Kasler failed to challenge the decision in accordance with the procedures authorized under the CDA, the decision became final and its merits cannot be reviewed by this or any other court or tribunal.

### C. The Alleged Dispute Regarding Kasler's Notice of the Final Decision

■ Kasler contends that summary judgment was inappropriate because it offered evidence establishing a genuine dispute of material fact as to the notification of Kasler. Kasler presented three affidavits, from its president, its counsel, and an employee of its codefendant, Fireman's Fund, asserting that they had not received the copy of the 1990 decision that the contracting officer claimed to have re-sent on August 25, 1992. J.A. at 169, 171, 178. Nevertheless, Kasler did not establish a genuine dispute as to a *material* fact.

Kasler correctly argues that the government's discussion of presumptions and its attempts to cast doubt on the credibility of Kasler's affiants were insufficient to overcome the specific claims in the affidavits at summary judgment; at most, the government's arguments merely demonstrated that a dispute existed. Kasler is also correct that the CDA requires that the contracting officer "mail or otherwise furnish" a copy of the decision to the contractor, 41 U.S.C. § 605(a), and that the CDA hinges the limitations periods for appealing a decision to an agency BCA and for suing in the Court of Federal Claims on the date of the contractor's receipt of the decision. 41 U.S.C. §§ 606, 609(a). Notification, therefore, could be a material fact preventing a district court from granting the government summary judgment on a final decision.

Kasler must lose this point, however, because the second copy of the decision was superfluous. The district court correctly held that "[w]hile the Court is not sure why the contracting officer found it necessary to issue copies of the November 1990 decision in August 1992, the Court need not address whether these copies constituted a properly noticed final decision." J.A. at 380. Because Kasler did not challenge the validity of the November 1990 decision through the appropriate channels within the period of time prescribed by statute, the government need not have sent another copy at all; the August 1992 copy was utterly gratuitous, and its receipt immaterial to the district court's analysis of the finality and unreviewability of the 1990 decision. Though this court has no way of knowing whether the government thought the renewed sending was necessary, even such a belief on the government's part would have no impact on the court's determination. Kasler's apparent desire to characterize the 1992 copy as a re-finalization of the decision, or as evidence that the government recognized the invalidity of the 1990 decision, is without support in fact or law.

If Kasler had alleged, with supporting evidence, that it never received a copy of the November 1990 decision, a genuine dispute as to a material fact would have existed and summary judgment would have been precluded. Kasler, however, did not contend that it had not received the 1990 decision, and presented no evidence to indicate that it had not. In fact, the affidavit from the codefendant's employee stated that the codefendant received a copy of the decision on November 12, 1990, and faxed it to Kasler's counsel on November 13. J.A. at 179 (Gardocky Aff. at ¶ 7). In addition, Kasler necessarily received notice of the decision when the United States raised a counterclaim based on that decision in the Claims Court litigation. Moreover, Kasler actually stipulated to the issuance of the 1990 decision in that litigation. J.A. at 59 (Joint Mem. re: Stipulations at ¶ 18). The government argues that the stipulation is "conclusive[ ]"; though we disagree, given that the Claims Court suit granted a motion to dismiss for lack of jurisdiction and therefore did not actually decide any fact,[13] the stipulation is

---

**13.** The issue also was not "actually litigated"; an issue is not actually litigated "if it is the subject of a stipulation between the parties. A stipulation may, however, be binding in a subsequent

probative, particularly since Kasler does not appear to contest notification as to the original 1990 decision. Based on these facts, and absent evidence that Kasler did not receive a copy of the decision when it was first issued, no material fact was in dispute and the district court correctly granted summary judgment in favor of the United States.

### III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the order of the district court granting summary judgment to the plaintiff.

action between the parties if the parties have manifested an intention to that effect." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982), *quoted in Jackson Jordan, Inc. v. Plasser Am.* *Corp.,* 747 F.2d 1567, 1576 n. 8 (Fed.Cir.1984). The United States has not pointed to any evidence of such intention.