137 F.3d 905
 76 Fair Empl.Prac.Cas. (BNA) 505,
72 Empl. Prac. Dec. P 45,235, 40 Fed.R.Serv.3d 66
 Janelle RUTHERFORD, Daniel David, John Rajic, Richard
Dembie, James Hoban, James Imars, Steven Sakal, Andrew
Christopher, Kevin Riley, Judith Torres, Norbert Kelssey,
Deborah McClure, Deborah Evans, and Theodore Horak, On
behalf of themselves and all other persons similarly
situated, Plaintiffs-Appellants,
v.
CITY OF CLEVELAND, Defendant-Appellee,
The Shield Club, Intervenor/Defendant-Appellee.
 No. 96-3967.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 24, 1997.
Decided March 4, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied April 27, 1998.
 
 Edward G. Kramer (argued and briefed), James M. Tighe (argued), Kramer & Niermann, Cleveland, OH, N. Stephen Nigolian, Cleveland, OH, for Janelle Rutherford.
 Edward G. Kramer, Kramer & Niermann, Cleveland, OH, N. Stephen Nigolian, Cleveland, OH, for Plaintiffs-Appellants, except Janelle Rutherford.
 Joseph John Jerse (argued), Corinne Katz Moore (briefed), City of Cleveland Law Department, Office of Director of Law, Cleveland, OH, Malcolm Douglas, Cleveland, OH, for City of Cleveland.
 Before: MERRITT, WELLFORD, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants, two sub-classes composed of non-minority applicants for the position of police patrol officer in Cleveland, appeal the district court's order granting summary judgment in favor of Defendant-Appellee City of Cleveland ("City") and Defendant-Appellee The Shield Club ("Shield"). The appellants challenge the constitutionality of the consent decree under which the City made its hiring decisions. In granting summary judgment, the district court concluded that this court's decision in Rafferty v. City of Youngstown, 54 F.3d 278 (6th Cir.), cert. denied, 516 U.S. 931, 116 S.Ct. 338, 133 L.Ed.2d 236 (1995), and section 108 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(n)(1)(B)(ii), foreclosed appellants' constitutional challenge to the consent decree because their interests had been adequately represented by the parties to the litigation giving rise to the decree. For the reasons that follow, we reverse.
 
 I. BACKGROUND
 A. Facts
 
 2
 On November 11, 1977, the district court approved a consent decree between Shield, which represented African-American police officers, and the City in Shield Club v. City of Cleveland, Case Nos. C72-1088 and C77-346. J.A. at 278-285 (consent decree). That consent decree represented the culmination of five years of litigation between Shield, the City, and the Fraternal Order of Police ("FOP")[1] in which Shield sued the City for racial discrimination adversely affecting the hiring and promoting of African-American police officers in the Cleveland Police Department ("CPD"). J.A. at 200 (Shield Club Complaint). The consent decree governed the hiring and promotion practices of the CPD. The FOP, which had vigorously contested the litigation and the creation of the consent decree, refused to sign onto it. J.A. at 220-277 (Hearing re Entry of Consent Decree).
 
 
 3
 Subsequently, on December 21, 1984, the district court amended the consent decree. J.A. at 416-423 ("Amended Consent Decree"). Initially, the City, the FOP, and the Cleveland Police Patrolmen's Association ("CPPA")[2] vigorously contested any extension of the consent decree. J.A. at 378 (FOP's Br. in Opp.); 394 (CPPA's Br. in Opp.). However, they eventually participated with Shield in negotiating an amended consent decree. Appellee's Br. at 3-4. The amended consent decree only governed the hiring practices of the CPD. By its terms, the amended consent decree would expire either when 33% of the CPD were minority officers or on December 31, 1992, whichever occurred first. For any year that the City did not hire a minimum of seventy officers, the life of the decree would be extended by an additional year unless the City had already achieved the 33% level. There were two years in which the city did not hire seventy police officers; consequently, the decree was extended by two years. The district court terminated the decree on the FOP's unopposed motion on May 15, 1995, finding that the City had met the 33% threshold as of June 16, 1994. J.A. at 454-55.
 
 B. Procedural History
 
 4
 Appellants are comprised of two sub-classes of non-minority applicants for the position of police patrol officer in Cleveland. Appellants' Br. at 9. Sub-class A is comprised of applicants who allege that as a result of the City's hiring pursuant to the consent decree, they were never considered for the position of patrol officer even though minority candidates who ranked lower than they did on the May 18, 1992 eligibility list were considered for that position. This sub-class is approximately seven hundred in number. Sub-class B is comprised of approximately three-hundred applicants who were considered for the position of patrol officer, but were rejected by the City based on qualifications that were allegedly not applied to minority applicants who were lower down on the May 18, 1992 eligibility list, but who were hired for the position. According to appellants, the City took this action pursuant to the consent decree. Id. at 9-10.
 
 
 5
 Appellants filed an initial complaint along with a Motion for a Temporary Restraining Order and for a Preliminary Injunction against the City, J.A. at 12, which motion the district court denied. J.A. at 124. Appellants then filed an Amended Complaint, J.A. at 32, that set forth five causes of action: (1) violations of 42 U.S.C. §§ 1981, 1983, and the Equal Protection Clause of the Fourteenth Amendment; (2) violations of § 1983 and the Due Process Clause of the Fourteenth Amendment to the Constitution; (3) violations of § 1985(3) and the Equal Protection and Due Process Clauses; (4) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (5) violation of Ohio's common law of fraud. J.A. at 58-60. In their amended complaint, appellants requested a preliminary and permanent injunction as well as declaratory relief, front and back pay, compensatory and punitive damages, and attorney's fees and costs.
 
 
 6
 The district court conditionally certified the appellants' two classes, J.A. at 152, and asked the parties to brief the impact on the case, if any, of this court's decision in Rafferty. J.A. at 169. Thereafter, Shield filed a motion to dismiss, and the City filed for summary judgment.[3] J.A. at 170 (Shield's Motion to Dismiss); 457 (City's Motion for Summary Judgment). The district court granted summary judgment in favor of both Shield and the City.[4] J.A. at 120 (Judgment Entry). Appellants then filed this timely appeal.
 
 
 7
 On appeal, appellants raise two issues. First, they contend that the district court erred in holding that this court's decision in Rafferty and § 108 of the 1991 Civil Rights Act foreclosed appellants' challenge to the constitutionality of the amended consent decree because their interests had been adequately represented by the FOP and the CPPA in the Shield litigation. Second, they assert that the district court erred in holding that appellants could not bring their claims as independent actions because all of the claims arose out of the consent decree. Appellants' Br. at 8.
 
 II. JURISDICTION
 
 8
 The district court properly exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201, and 42 U.S.C. § 2000e-5(f)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 III. ANALYSIS
 
 9
 The district court held that both this court's decision in Rafferty and § 108 deprived the appellants of standing to maintain this action. The district court reached its conclusion by determining that appellants' interests were adequately represented by the FOP and the CPPA throughout the course of the Shield litigation, especially in the negotiations culminating in the amended consent decree entered in that litigation. J.A. at 116-18. We review de novo the district court's grant of summary judgment. United States v. Kasler Elec. Co., 123 F.3d 341, 343 (6th Cir.1997). We reverse the district court's determination because neither § 108 nor our decision in Rafferty deprives appellants of standing to maintain this action.
 
 A. Civil Rights Act of 1991
 
 10
 Section 108 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(n)(1)(B) provides in pertinent part as follows:
 
 
 11
 A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws--...(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.
 
 
 12
 The fundamental question is how to determine whether a party's interests were adequately represented by another. Guidance to answering that question is provided by the Report of the House Education and Labor Committee which states:
 
 
 13
 Subsection 703(m)(1)(B) sets a standard analogous to that of Rule 23 [of the Federal Rules of Civil Procedure], and permits preclusion of subsequent challenges to court decrees by persons whose interests "were adequately represented by another person who challenged such judgment or order prior to or after" entry. The term "adequately represented" is intended to have the meaning usually associated with the term under Rule 23.
 
 
 14
 H.R. REP. NO. 102-40(I), at 57, reprinted in 1991 U.S.C.C.A.N. 549, 595.
 
 
 15
 Rule 23(a) establishes four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. See FED.R.CIV.P. 23. In order to understand the nature of the adequate representation requirement, the Supreme Court's recent construction of Federal Rule of Civil Procedure 23(a)(4) offers assistance. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, ---- - ----, 117 S.Ct. 2231, 2250-51, 138 L.Ed.2d 689 (1997) (quotation omitted) (citations omitted). Accordingly, to satisfy the adequate representation requirements under Rule 23 and thereby under § 108, there must be an absence of a conflict of interest, and the presence of common interests and injury.
 
 
 16
 There are similarities in some of the concerns addressed by prerequisites 23(a)(2) (commonality), 23(a)(3) (typicality), and 23(a)(4) (representation). As the Supreme Court explained in General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982):
 
 
 17
 The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.
 
 
 18
 Id. at 157 n. 13, 102 S.Ct. at 2370-71 n. 13. Cf. HERBERT NEWBERG & ALBA CONTE, NEWBURG ON CLASS ACTIONS § 3.22, at 3-126 (3d ed. 1992) ("[T]he two factors that are now predominately recognized as the basic guidelines for the Rule 23(a)(4) prerequisite are (1) absence of conflict and (2) assurance of vigorous prosecution."); CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1768, at 326 (2d ed. 1986) ("It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent."). For purposes of this case, the key determinants underlying the adequacy of representation relate to the issues of conflicts of interest, common interest, and common injury.
 
 
 19
 Here, there is no commonality of interest or injury between the prior parties (the FOP and the CPPA) and the appellants who are seeking to become patrol officers, because the members of the FOP and the CPPA are all current employees. Those people who are already employed suffered no injury related to the hiring procedures for subsequent hires compelled by the amended consent decree. The FOP and the CPPA earlier opposed the consent decree, at least in part, because it covered promotions--the issue directly affecting their members. Yet despite initial vigorous opposition to the extension of the consent decree, the two unions eventually agreed to the amended consent decree that just covered hiring, the issue not affecting their members (who already were employees), but only affecting applicants like the appellants.
 
 
 20
 These circumstances establish that far from there being a commonality of interest or injury, there is in fact a conflict of interest. The interest of the FOP and CPPA in securing promotion opportunities for their members is different from and poses a potential conflict with the interest asserted by appellants in securing hiring opportunities under the hiring process created by the amended consent decree. That potential conflict manifests itself in the decision by the FOP and CPPA to abandon their opposition to the amended consent decree covering the hiring process; it appears they did so in exchange for the amended consent decree not covering the promotion process. As a result, in abandoning an issue affecting applicants only, the FOP and CPPA concomitantly abandoned any purported representation of the interests of applicants.
 
 
 21
 In the absence of commonality and the presence of a conflict, the FOP and the CPPA did not meet the adequate representation requirements under Rule 23 and thereby failed to qualify as adequate representatives under § 108. See, e.g., General Tel. Co. of the Northwest v. EEOC, 446 U.S. 318, 331, 100 S.Ct. 1698, 1706-07, 64 L.Ed.2d 319 (1980) ("In employment discrimination litigation, conflicts might arise, for example, between employees and applicants who were denied employment and who will, if granted relief, compete with employees for fringe benefits or seniority. Under Rule 23, the same plaintiff could not represent these classes.").[5]
 
 
 22
 Congress has placed great emphasis on encouraging voluntary settlements, especially in the employment context. Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 517, 106 S.Ct. 3063, 3072-73, 92 L.Ed.2d 405 (1986). Section 108 strikes a balance between encouraging consent decrees and "ensuring that those affected by decrees have an adequate opportunity to protect their interests." Andrea Catania and Charles A. Sullivan, Judging Judgments: The 1991 Civil Rights Act and the Lingering Ghost of Martin v. Wilks, 57 BROOK. L. REV . 995, 1032 (1992). In striking this balance, Congress "endeavor[ed] to promote the finality of consent judgments by providing limited opportunity for challenges to their legitimacy." Marjorie A. Silver, Fairness and Finality: Third-Party Challenges to Employment Discrimination Consent Decrees After the 1991 Civil Rights Act, 62 FORDHAM L. REV. 321, 340-41 (1993).
 
 
 23
 One such limited opportunity allows a nonparty to challenge a consent decree where the nonparty's interests were not adequately represented. As the Supreme Court has explained, "it would violate the Due Process Clause of the Fourteenth Amendment to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented." Richards v. Jefferson County, 517 U.S. 793, ----, 116 S.Ct. 1761, 1764, 135 L.Ed.2d 76 (1996) (citing Hansberry v. Lee, 311 U.S. 32, 37, 61 S.Ct. 115, 116, 85 L.Ed. 22 (1940)). Because the appellants were not adequately represented by either the FOP or the CPPA in the Shield litigation, § 108 and principles of due process require that we allow them to bring their action now.[6]
 
 B. Rafferty
 
 24
 Although the district court rested its decision in part on an analysis of Rafferty v. City of Youngstown, 54 F.3d 278 (6th Cir.), cert. denied, 516 U.S. 931, 116 S.Ct. 338, 133 L.Ed.2d 236 (1995), we conclude that the factual context of Rafferty completely distinguishes that case from the case at bar. In Rafferty, a class composed of white police officers sued the City of Youngstown claiming unlawful racial discrimination in regard to the City's promotion procedures taken pursuant to a consent decree entered into by the City in the previous Williams v. Vukovich litigation. The district court in Rafferty granted summary judgment to the City holding that the plaintiffs lacked standing to challenge actions taken by the City pursuant to the consent decree. This court affirmed, holding that because the FOP, the exclusive bargaining representative of all police officers in Youngstown (including the plaintiffs), had intervened in the Williams litigation, the plaintiffs' interests had been adequately represented, and they were bound by the consent decree.
 
 
 25
 In contrast, as previously explained, in the instant case neither the FOP nor the CPPA adequately represented the interests of the appellants, who were not members of either organization. Accordingly, the facts in Rafferty distinguish it from the facts presented in this case, and that factual distinction requires us to reach a different conclusion here from the one reached by the Rafferty court.[7]
 
 IV. CONCLUSION
 
 26
 For the foregoing reasons, the order of the district court granting summary judgment to the defendants-appellees is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 The FOP intervened at the inception of the litigation as a party-defendant. See J.A. at 210 (Motion to Intervene)
 
 
 [2]
 CPPA intervened as a party-defendant for purposes of challenging any extension or modification of the original consent decree. J.A. at 292 (Motion to Intervene)
 
 
 [3]
 Shield intervened in the litigation as a party-defendant. J.A. at 134
 
 
 [4]
 The district court treated Shield's motion to dismiss as one for summary judgment because Shield had attached several exhibits to its motion
 
 
 [5]
 See John O. McGinnis, The Bar Against Challenges to Employment Discrimination Consent Decrees: A Public Choice Perspective, 54 LA. L. REV . 1507, 1511-12 (1994) (arguing that employment discrimination defendants have an incentive to shift the costs of settlement with plaintiffs to third parties, such as future applicants); Cynthia L. Fountaine, Due Process and The Impermissible Collateral Attack Rule in Employment Discrimination Cases: An Analysis of Section 108 of The Civil Rights Act of 1991, 58 U. PITT. L. REV . 435, 470 (1997) ("The employee seeks to protect opportunities for promotion and to avoid layoff, whereas the prospective employee ... is interested also in hiring practices. This difference in interests suggests that an employee's interests are not sufficiently similar to a prospective employee's interests to justify a conclusion that one can be represented by the other.") (citing General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982))
 
 
 [6]
 Appellants also assert that the district court erred in ruling that their claims did not arise independently of the consent decree. We need not reach this issue because we reverse the district court's ruling barring appellants' claims based on our analysis of § 108
 
 
 [7]
 Rafferty is also distinguishable because it was decided under the law that existed prior to the enactment of § 108 of the 1991 Civil Rights Act. Since the conduct at issue in Rafferty predated the enactment of § 108, the court in Rafferty explicitly declined to consider § 108. See 54 F.3d at 281 n. 2. See also id. at n. 3 (Rafferty court notes that its "holding is based on the court's analysis of Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) and applies only to cases arising prior to the passage of the Civil Rights Act of 1991, which overruled portions of Martin.") (emphasis added). The case at bar, on the other hand, concerns hiring decisions after the effective date of § 108 (November 21, 1991) and is therefore governed by that statute